## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>CHAD F. WOLF, in his official capacity as Acting Secretary, U.S. Department of Homeland Security,<br><br>Office of the General Counsel<br>Department of Homeland Security<br>Mail Stop 3650<br>Washington, DC 20528<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Office of the General Counsel<br>Department of Homeland Security<br>Mail Stop 3650<br>Washington, DC 20528<br><br>KENNETH T. CUCCINELLI, in his official capacity as Acting Director, U.S. Citizenship & Immigration Services,<br><br>U.S. Citizenship & Immigration Services<br>425 I. Street NW, Room 6100<br>Washington, DC 20536<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>U.S. Citizenship & Immigration Services<br>425 I. Street NW, Room 6100<br>Washington, DC 20536<br><br>    Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION[1]

1.      Plaintiff Jane Doe brings this action under the Administrative Procedure Act ("APA") against Defendants—the Acting Secretary of Homeland Security, the Department of Homeland Security ("DHS"), U.S. Citizenship & Immigration Services ("USCIS"), and the Acting Director of USCIS—to challenge their unlawful denial of her petition for Special Immigrant Juvenile ("SIJ") status.

2.      SIJ status provides a path to lawful permanent residence for immigrant children in the United States who cannot be reunited with one or both of their parents due to maltreatment. There are four requirements for SIJ eligibility: (1) the immigrant must have been under 21 years old when the SIJ petition was filed and be unmarried; (2) a state juvenile court must have declared the immigrant dependent on the court, or have placed the immigrant in the custody of a state agency or individual appointed by such a court; (3) a state juvenile court must have deemed the immigrant's reunification with one or both parents not viable due to abuse, abandonment, neglect, or some similar basis; and (4) a state juvenile court must have found that it is not in the immigrant's best interest to return to her home country.  8 U.S.C. §§ 1101(a)(27)(J)(i)-(ii), 1101(b)(1), 1232(d)(6).  SIJ classification of an eligible immigrant is subject to USCIS's consent.  *Id.* § 1101(a)(27)(J)(iii).

3.      In September 2016, at the age of seventeen, Plaintiff filed a petition for SIJ status with USCIS.  *See* Ex. 1, SIJ Petition.  She met and continues to meet all of the above criteria for SIJ eligibility.

---

[1] Plaintiff believes this case is related to *Doe v. Wolf*, 19-cv-3787, because the agency made the same fundamental error, and the legal issues in both cases substantially overlap.  Much of the relevant legal background and argument are identical across the two complaints.

4.      Most relevantly here, Plaintiff's SIJ petition was supported by a predicate juvenile court order from the 315th District Court of Harris County, Texas (hereinafter "Texas Juvenile Court" or "Juvenile Court"). After holding a hearing at which Plaintiff testified about abuse, neglect, and abandonment by Plaintiff's parents and family members in Honduras, the Texas Juvenile Court declared Plaintiff dependent on that court and issued the required SIJ findings. *See* Ex. 2, Declaratory Judgment.

5.      Nevertheless, USCIS's Administrative Appeals Office ("AAO") issued a final agency decision denying Plaintiff's SIJ petition. The AAO denied the petition for two reasons.

6.      First, the AAO stated that the Texas Juvenile Court's dependency declaration was deficient because it did not "specify the state child welfare law that [the Juvenile Court] applied in reaching [its] determination." Ex. 3 at 2-3. Said otherwise, in the AAO's view, a state juvenile court must not only make the requisite dependency findings, but also must recite chapter and verse the specific provisions of state law that empower it to make its decisions. Nothing in the governing law or regulations requires such citations, particularly when, as here, the Texas Juvenile Court expressly stated that its findings were based on Texas law and the record before the Texas Juvenile Court contained citations to those laws.

7.      Second, the AAO found that the SIJ application was not "bona fide," citing a stray comment by the Texas Juvenile Court judge that Plaintiff was "entitled to [SIJ] status." The AAO interpreted that comment as "suggest[ing] that the hearing, and subsequent Declaratory Judgment, principally concerned [Plaintiff's] eligibility for a benefit under federal immigration law, as opposed to a request for protection under the state child welfare laws." *Id.* at 4. But the Texas Juvenile Court judge referenced SIJ status *after* making the requisite state court findings, and the AAO did not dispute that the record supported those findings, i.e., that Plaintiff was

subjected to abuse, abandonment, and neglect by her parents, and that it was not in her best interest to return to Honduras.  Thus, the AAO's conclusion that Plaintiff's SIJ application was not "bona fide" cannot be squared with the record before the Juvenile Court nor with the SIJ statutory framework, which makes state-court findings the basis of SIJ eligibility.

8.      In support of its decision denying Plaintiff SIJ status, the AAO purported to rely on the statute setting forth the eligibility requirements for SIJ status, 8 U.S.C. § 1101(a)(27)(J); the regulation promulgated pursuant that statute, 8 C.F.R. § 204.11; and the *USCIS Policy Manual*.  None of those materials support the denial.

9.      The AAO's decision is inconsistent with 8 U.S.C. § 1101(a)(27)(J).  Regarding the requisite dependency declaration, that statute merely states that an eligible immigrant is "an immigrant who is present in the United States—(i) who has been declared dependent on a juvenile court located in the United States … and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. §1101(a)(27)(J)(i).  The statute does not require the predicate juvenile court findings to recite citations to particular state statutes.  Moreover, it expressly conditions SIJ eligibility on state court findings and does not preclude a state court from recognizing, as the Texas Juvenile Court did here, that if those findings are made, the immigrant child is eligible for SIJ status.

10.      The AAO's decision is also inconsistent with the cited regulation, which does not require citations to particular state statutes or prohibit recognition of the SIJ eligibility requirements.  The regulation provides that "[a]n alien is eligible for classification as a special immigrant under section 101(a)(27)(J) of the Act if the alien: … [h]as been declared dependent upon a juvenile court located in the United States in accordance with state law governing such

declarations of dependency, while the alien was in the United States and under the jurisdiction of the court." 8 C.F.R. § 204.11(c)(3).

11.     The *USCIS Policy Manual* provisions on which the AAO purported to rely likewise provide no support for its decision, and those provisions do not carry the force of law in any event.  At the time of the AAO's decision, in a provision promulgated after Plaintiff filed her SIJ petition, the *Policy Manual* simply stated that the juvenile court order "must provide the required [findings] regarding dependency or custody" and "should use language establishing that the specific findings (conclusions of law) were made under state law."  6 *USCIS Policy Manual* J.3(A)(2), https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-3.  The declaratory judgment from the Texas Juvenile Court did so by citing to the Texas Uniform Declaratory Judgments Act; declaring Plaintiff "dependent upon this juvenile court in accordance with the laws of the State of Texas"; and citing provisions of the Texas Family Code as support for its factual findings that Plaintiff was abused, abandoned, and neglected. *See* Ex. 2.

12.     In another *Policy Manual* provision promulgated after Plaintiff filed her SIJ petition, the *Policy Manual* provided that USCIS will consent to SIJ classification only if the request is "bona fide," and "the factual basis of each of the required findings is evidence that the request for SIJ classification is bona fide."  6 *USCIS Policy Manual* J.2(D)(5), https://web.archive.org/web/20170501013430/https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html.  As the *Policy Manual* requires, here there is a factual basis for each of the Juvenile Court's findings.

13.     Not only is the AAO's decision unsupported by the statute, the regulation, or the *Policy Manual*, it is also arbitrary and capricious because the AAO did not explain why an immigrant child's ability to stay in this country should depend on whether a state juvenile court

happens to include a citation to a state statute in its order finding that the child is dependent on that court—particularly when, as here, the state-court record before USCIS is replete with citations to the relevant Texas laws, and the Juvenile Court expressly stated it was applying Texas state law.  Nor is there any reason why an immigrant child who otherwise meets all eligibility criteria for SIJ status should be denied that status simply because the state court references SIJ classification during a hearing and recognizes that the state court findings create eligibility for SIJ status, whether or not USCIS ultimately grants that status.

14.     The AAO's decision is arbitrary and capricious for the further reason that the USCIS *Policy Manual* provisions that the AAO purported to rely on were promulgated *after* Plaintiff filed her SIJ petition, and USCIS first began imposing its unlawful state-law citation requirement and prohibition on state court references to SIJ status *after* the Texas Juvenile Court issued its decision in Plaintiff's case.  The AAO failed to even acknowledge that it was imposing new requirements—much less explain why those requirements should be applied retroactively to state court orders.

15.     The inequitable results of the agency's rule further demonstrate its arbitrariness. Plaintiff is being denied humanitarian relief on the basis of irrational requirements created out of whole cloth—that the predicate state-court dependency finding must include precise citations for all points under the applicable state law, and that those same state-court findings cannot reference SIJ status, even though they are essential in the SIJ scheme.  If the AAO's decision stands, the grant or denial of SIJ status would turn not on the merits of SIJ applications but on whether the family-court judge the applicant happened to draw had a habit of being observant with respect to citations or of being ignorant or feigning ignorance with respect to federal law—a happenstance well outside of the child's control.  When an outcome of an agency's rule "depends

entirely upon ... happenstance," the rule is "arbitrary," and "has no legal basis." *Samaritan Health Serv. v. Bowen*, 811 F.2d 1524, 1526 (D.C. Cir. 1987).

16.     Accordingly, Defendants' denial of Plaintiff's SIJ petition is unlawful in multiple respects and cannot stand.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, because this action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq.* The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States, or agencies thereof; all Defendants reside in this District; and a substantial part of the events or omissions giving rise to the claim occurred in this District.

19.     Plaintiff exhausted her administrative remedies by appealing to the USCIS Administrative Appeals Office ("AAO"), even though exhaustion of administrative remedies is not a prerequisite to an APA suit challenging a denial of SIJ status. *See Budhathoki v. Nielsen*, 898 F.3d 504, 507 n.3 (5th Cir. 2018).

## PARTIES

20.     Plaintiff Jane Doe is a citizen of Honduras currently living with her cousin's family in Houston, Texas.

21.     Defendant DHS is a cabinet-level department of the U.S. government. Its components include USCIS, Customs and Border Protection, and Immigration and Customs Enforcement. DHS is responsible for the administration of the INA.

22.     Defendant Chad F. Wolf is the Acting Secretary of Homeland Security and is

sued in his official capacity.[2]  Acting Secretary Wolf is responsible for the management and

administration of DHS and the supervision of all its employees.

23.     Defendant USCIS is a federal agency and a component of DHS.  Its

responsibilities include the adjudication of requests for immigration benefits.

24.     Defendant Kenneth T. Cuccinelli performs the duties of the Acting Director of

USCIS and is sued in his official capacity.[3]  Acting Director Cuccinelli is responsible for the

management and administration of USCIS and the supervision of all of its employees.

### FACTUAL ALLEGATIONS

**I.     Special Immigrant Juvenile Status Provides A Path To Lawful Permanent Residence For Maltreated Immigrant Children**

25.     In 1990, Congress amended the INA to establish SIJ status.  *See* Immigration Act

of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978.  As originally enacted, SIJ classification

was available to children in foster care in the United States.  The statute defined "special

immigrant" as:

> an immigrant (i) who has been declared dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence ....

---

[2] Plaintiff does not challenge Defendant Wolf's appointment but notes that the legality of his appointment has been called into question.  *See, e.g.,* Letter from H.R. Committee on Homeland Security and Committee on Oversight and Reform to Comptroller General of the United States (Nov. 15, 2019), available at
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/191115%20T%20Dodaro%20re%20Letter%20to%20GAO%20on%20Wolf-Cuccinelli%20Appointment.pdf.
[3] Defendant Cuccinelli continues to perform the duties of the Director of USCIS, but his appointment as Acting Director of USCIS has been ruled unlawful.  *See L.M.-M. v. Cuccinelli,* 442 F. Supp. 3d 1 (D.D.C. 2020).

*Id.*

26.     In 1994, Congress expanded SIJ eligibility, adding immigrants "legally

committed to, or placed under the custody of, an agency or department of a State."  Immigration

and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219, 108 Stat. 4305,

4316.  This increased the class of eligible children by adding children deemed by a state juvenile

court to be eligible for long-term foster care, but who were placed in a different state custodial

arrangement.

27.     In 1998, Congress again amended the definition of "special immigrant," adding

two requirements:  First, Congress required that the immigrant's eligibility for long-term foster

care be "due to abuse, neglect, or abandonment."  Departments of Commerce, Justice, and State,

the Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119, § 113,

111 Stat 2440.  Second, for all special immigrant juveniles, Congress required that the Attorney

General "expressly consent[] to the dependency order serving as a precondition to the grant of

special immigrant juvenile status."  *Id.*  For immigrants "in the actual or constructive custody of

the Attorney General"—that is, in the custody of the Immigration and Nationality Service (the

predecessor agency to USCIS)—the Attorney General had to "specifically consent[]" to the

jurisdiction of the juvenile court.  *Id.*

28.     The Conference Report explained that the amendment served "to limit the

beneficiaries of this provision to those juveniles for whom it was created, namely abandoned,

neglected, or abused children."  H.R. Conf. Rep. No. 105-405, at 130 (1997), *as reprinted in*

1997 U.S.C.C.A.N. 2941, 2981.  Specifically, the amendment addressed concerns about

international students attending college in the United States obtaining SIJ status.  *See*

*Departments of Commerce, Justice and State, the Judiciary, and Related Agencies*

*Appropriations for Fiscal Year 1998: Hearings Before a Subcommittee of the Committee on Appropriations*, 105th Cong. 1 (1997) (testimony of Senator Pete Domenici). Apparently, a few foreign national college students had met some states' requirements for "eligibil[ity] for long-term foster care" because their parents were outside the United States, without regard to whether they had been maltreated. *See id.* at 111-12.

29.     "The conferees intend[ed] that" state juvenile courts, and *not* the Attorney General, would continue to "mak[e] determinations of dependency status." H.R. Conf. Rep. No. 105-405, at 130. Meanwhile, "the involvement of the Attorney General," that is, the consent requirement, was intended to ensure the statutory requirements were met such that the juvenile court order had been sought "for the purpose of obtaining relief from abuse or neglect." *Id.*

30.     In 2008, Congress vastly expanded SIJ status when it unanimously passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, § 235, 122 Stat. 5044; 154 Cong. Rec. S10,886-87 (daily ed. Dec. 10, 2008); 154 Cong. Rec. H10,888-905 (daily ed. Dec. 10, 2008). The relevant provisions of the TVPRA—the requirements for SIJ eligibility in force today—are codified at 8 U.S.C. §§ 1101(a)(27)(J), 1232(d)(6).

31.     Most relevantly here, the TVPRA removed the requirement that the immigrant be "deemed eligible by [the state juvenile] court for long-term foster care." Pub. L. No. 110-457, § 235. In its place, Congress made SIJ status available to an immigrant:

> who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law....

8 U.S.C. § 1101(a)(J)(27)(i).

-10-

32.    Under this expansion of eligibility, an immigrant (who meets the other statutory requirements) is now eligible for SIJ status if a state juvenile court finds reunification with one or both parents is not viable.  Pub. L. No. 110-457, § 235.  The TVPRA simultaneously expanded the predicates for the non-viability of reunification finding to include not only "abuse, neglect, or abandonment," but also any "similar basis found under State law." *Id.*

33.    The TVPRA also enacted several limits on USCIS's adjudication of SIJ petitions, including (1) precluding USCIS from "den[ying] special immigrant status ... based on age if the alien was a child on the date on which the alien applied for such status," i.e., precluding aging out; (2) a 180-day deadline for USCIS adjudication of SIJ petitions; and (3) reducing and streamlining consent requirements by both removing the requirement that the "Attorney General expressly consent[ ] to the dependency order" and transferring the consent authority to the Secretary of Homeland Security. *Id.*  Now, "specific[] consent[]" of the Secretary is required only for juveniles in the custody of the Secretary of Health and Human Services.  For all others, the Secretary need only "consent[] to the grant of special immigrant juvenile status."  8 U.S.C. § 1101(a)(27)(J)(iii).

34.    Thus, under current law, the only requirements for SIJ eligibility are: (1) the immigrant must have been under 21 years old when the SIJ petition was filed and be unmarried; (2) a state juvenile court must have declared the immigrant dependent on the court, or have placed the immigrant in the custody of a state agency or individual appointed by such a court; (3) a state juvenile court must have deemed the immigrant's reunification with one or both parents not viable due to abuse, abandonment, neglect, or some similar basis; and (4) a state juvenile court must have found that it is not in the immigrant's best interest to return to her home country.

8 U.S.C. §§ 1101(a)(27)(J)(i)-(ii), 1101(b)(1), 1232(d)(6).  Once an immigrant is found eligible, SIJ classification is subject to USCIS's consent.  *Id.* § 1101(a)(27)(J)(iii).

35.    Among other benefits, SIJ status confers eligibility for lawful permanent resident status without regard to how the immigrant arrived in the United States.  *See* 8 U.S.C. §§ 1153(b), 1255(a), (h)(1).  Congress provided that the bars to adjustment of status that generally apply to immigrants who unlawfully enter the United States are statutorily inapplicable to those with SIJ status.  *See* 8 U.S.C. § 1255(h).[4]

36.    Despite the TVPRA's significant expansion of SIJ eligibility, the Department of Homeland Security has yet to update its regulations on SIJ eligibility.[5]

## II.    After Suffering Abuse, Neglect, And Abandonment In Honduras, Plaintiff Jane Doe Fled To The United States At Age Sixteen[6]

37.    Plaintiff was born in Honduras in November 1998 and lived there, with her mother and siblings, until she fled to the United States at age 16 to escape abuse, neglect, and abandonment.

38.    Until she was 12 or 13 years old, Plaintiff did not know her father.  Plaintiff's mother told her that he had abandoned them when Plaintiff was an infant.  No one in Plaintiff's family, including her mother, knew where Plaintiff's father lived.  Throughout her childhood, Plaintiff's father did not visit or call Plaintiff or support her financially.

39.    When Plaintiff was around 12 or 13 years old, her mother happened to run into Plaintiff's father near Plaintiff's hometown.  Two weeks later, Plaintiff's father came to visit her.

---

[4] The parents of an immigrant with SIJ status do not themselves obtain immigration benefits or rights from their child's SIJ status.  *See* 8 U.S.C. § 1101(a)(27)(J)(iii)(II).

[5] The regulations on the books do not reflect current governing law; they require, for example, "[a] juvenile court order … showing that the court has found the beneficiary eligible for long-term foster care."  8 C.F.R. § 204.11(d)(2)(ii).

[6] Unless otherwise specified, the facts presented herein are taken from Plaintiff's affidavit submitted in support of her petition for declaratory judgment.  *See* Ex. 4.

40.     After the visit, Plaintiff and her father spoke on the phone about once a month. During the phone calls, Plaintiff's father said that he would send Plaintiff money for her school expenses, but he never did. Plaintiff and her father spent very little time together, and he never provided her with financial or emotional support.

41.     When Plaintiff was 14 years old, her mother began dating a man who became Plaintiff's stepfather. He visited Plaintiff's mother often and frequently spent all day and night at their house.

42.     One night when Plaintiff was 15 years old, her stepfather was spending the night at her house. As Plaintiff was trying to fall asleep, her stepfather sexually abused her. Although she called out for help, her mother was asleep and did not respond to her cries. Plaintiff's stepfather stopped touching Plaintiff when she cried out for help.

43.     Plaintiff's mother confronted her stepfather about his behavior, but her stepfather denied it. Plaintiff's mother believed him. Plaintiff's mother did not bring Plaintiff to a doctor or report the stepfather's abuse to the authorities.

44.     About a week after her stepfather abused her, Plaintiff sought refuge with her father and his family, which included his wife, her 10-year old daughter, and her two sons, who were 18 and 20 years old.

45.     The first night that she was with her father's family, Plaintiff was in her bedroom when one of the older sons crawled into her bed and raped her.

46.     The next morning, Plaintiff told her father what had happened. Her father and his wife tried to contact her son, but he had fled. Plaintiff's father took her to a doctor, but her father appeared relieved when the doctor did not find visible physical injury. Plaintiff's understanding was that her father did not believe that she had been raped.

47.     Because Plaintiff no longer felt safe with her father and had nowhere else to go, she returned to her mother's house. When she told her mother that she had been raped, her mother did nothing. Although Plaintiff's father called her a few times, Plaintiff did not want to speak with him due to the traumatic events. Plaintiff's father then stopped calling her.

48.     Meanwhile, Plaintiff's stepfather continued to harass Plaintiff, including by making lewd hand gestures at her when her mother could not see them. He drank heavily, and his sexual advances became more aggressive when he drank. He said inappropriate things, like commenting on how good Plaintiff's body looked. When Plaintiff confronted her stepfather about these comments, he did not deny making them. Instead, he blamed his behavior on being drunk. Plaintiff's mother ignored these confrontations and did nothing to protect Plaintiff.

49.     Because Plaintiff felt unsafe sleeping in the same house as her stepfather, she would often spend the night at her sister's house.

50.     As a result of the abuse she endured while under the care of both her mother and her father, Plaintiff felt that neither of her parents could protect her.

51.     Plaintiff told her uncles about her stepfather's sexual abuse and harassment. They did not confront her stepfather or her mother. Although they realized that Plaintiff could no longer live at home, they were unwilling to care for her. Instead, Plaintiff's uncles suggested she go to the United States, where she had other relatives.

52.     Plaintiff left Honduras in August 2015. She was sixteen years old at the time.

53.     On September 5, 2015, upon entering the United States, Plaintiff was apprehended by Customs and Border Protection ("CBP") and placed in the custody of the Office of Refugee Resettlement.

54.     Plaintiff lived in an Office of Refugee Resettlement shelter in Driscoll, Texas for several months until she was released to live with a family friend in Houston, Texas.

55.     Since living in the United States, Plaintiff has had no contact with her father.  She calls her mother intermittently to check on her siblings.  Plaintiff's siblings tell her that her mother is still with her stepfather and that he still spends extensive time at her mother's house. Her mother does not provide Plaintiff financial or emotional support.

56.     On September 6, 2015, CBP issued a Notice to Appear, placing Plaintiff in removal proceedings.  Ex. 6, Notice of Intent to Deny at 5.  The proceedings are ongoing, and the merits hearing is scheduled for fall 2023.[7]

## III.   After A Hearing, A Texas Juvenile Court Made The Requisite SIJ Findings

### A. Plaintiff Filed a Petition for Declaratory Judgment

57.     On May 25, 2016, when Plaintiff was seventeen, she filed in Texas Juvenile Court (through pro bono counsel) a petition for a declaratory judgment finding Plaintiff dependent on the Juvenile Court.  Ex. 5, Petition for Declaratory Judgment.

58.     Family district courts in Texas, like the one where Plaintiff filed her petition for declaratory judgment, have "primary responsibility" for cases involving child welfare, dependency, and neglect.  TEX. GOV. CODE § 24.601(b)(4).

59.     The Texas Uniform Declaratory Judgments Act allows for "[a] court of record within its jurisdiction ... to declare rights, status, and other legal relations whether or not further

_____

[7] Because Plaintiff challenges the application of the SIJ statute, not the decision to seek her removal, the removal proceedings have no effect on this court's jurisdiction to adjudicate this APA action. *See, e.g., M.B. v. Quarantillo*, 301 F.3d 109, 111 (3d Cir. 2002); *F.L. v. Thompson*, 293 F. Supp. 2d 86, 92 (D.D.C. 2003).  And it is USCIS (a component of DHS) that adjudicates petitions for SIJ status, not immigration courts. *See* 8 U.S.C. § 1101(a)(27)(J)(iii) (placing power in the Secretary of Homeland Security to consent to the grant of SIJ status); *id.* § 1232(d)(2) (stating that the Secretary of Homeland Security shall adjudicate applications for SIJ status).

relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) ("Declaratory Judgments Act"). The Act does not prescribe a specific form that declaratory judgments must take.

60.     Plaintiff's declaratory judgment petition included numerous references and citations to the governing Texas law.

61.     As to jurisdiction, the declaratory judgment petition requested findings that: (1) the Juvenile Court had subject matter jurisdiction to enter declaratory judgments to declare rights, status, and other legal relations regarding those persons over whom the court has personal jurisdiction; (2) the Juvenile Court had personal jurisdiction over Plaintiff, as she resided within the geographical boundaries of Harris County, Texas; and (3) venue was proper in the case because Plaintiff resided within the geographical boundaries of Harris County, Texas. Ex. 5 ¶¶ 2-4. The petition also sought a finding that the Texas Juvenile Court is a juvenile court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles. *Id.* ¶ 5.

62.     As to the merits, Plaintiff sought a finding that she was "in need of an order from the court to prevent further harm to [herself]." *Id.* ¶ 4(1). Plaintiff also sought findings that "reunification with one or both parents" was "not viable due to abuse, neglect or abandonment or a similar basis found under TEX. FAM. CODE § 15[2].102(1),[8] 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4)," and that it was not in Plaintiff's best interest to return to her country of Honduras "because of abuse, neglect, or abandonment or a similar basis found under TEX. FAM. CODE § 15[2].102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4)." *Id.* ¶¶ 4(7)-(8).

---

[8] Due to a typographical error, Plaintiff's petition referred to Section 151 of the Texas Family Code, instead of Section 152. *See* Ex. 6, Notice of Intent to Deny at 5, n. 6.

Additionally, Plaintiff sought a declaration that she was dependent on the Juvenile Court "in accordance with the laws of the State of Texas while she is residing in the State of Texas." *Id.* ¶ 4(6).

63.     On August 11, 2016, Plaintiff filed in the Texas Juvenile Court an affidavit in support of her petition for declaratory judgment. *See* Ex. 4.  The affidavit recounted the events recited above (¶¶ 37-55), including the physical and emotional abuse Plaintiff suffered in Honduras, as well as Plaintiff's neglect and abandonment by her parents. *See* Ex. 4.

### B. The Texas Juvenile Court Held a Hearing and Weighed the Evidence of Abuse, Abandonment, and Neglect by Plaintiff's Family in Honduras

64.     On September 6, 2016, the Texas Juvenile Court held a hearing on the declaratory judgment petition. *See* Ex. 7, Sept. 6, 2016 Texas Hearing Transcript.  At the hearing, the Juvenile Court took judicial notice of Plaintiff's affidavit, *id.* 6:16-21, and Plaintiff testified under oath, *id.* 4:13-14.

65.     Plaintiff testified that her parents are in Honduras and that she had lived with her mother in Honduras until Plaintiff left for the United States. *Id.* 5:19-25.

66.     Plaintiff stated that her relationship with her father is "[n]ot good" because the "one ... time [she] did go visit him [her] stepbrother abused [her]." *Id.* 6:1-4.  She also testified that her father had "never" supported her financially. *Id.* 6:5-7.

67.     Turning to her relationship with her mother, Plaintiff testified that she stopped living with her mother because "the man she's with, her husband," abused Plaintiff. *Id.* 6:13-15. When asked how her relationship is with her mother now, Plaintiff replied that their relationship is "[s]ometimes good, sometimes bad because ... she continues to be with the person" who abused Plaintiff. *Id.* 6:22-7:1.  Plaintiff testified that her mother had "never" done anything to protect Plaintiff while Plaintiff was living with her. *Id.* 7:5-7.  As a result, Plaintiff said, she did

not feel safe in her mother's home. *Id.* 7:2-4. Plaintiff stated that neither of her parents provide

her financial support, that she would not feel safe living with either of her parents in Honduras,

and that there is no one in Honduras with whom she can live. *Id.* 7:8-17.

68.   Plaintiff then testified about her progress in high school, her friends, and her

desire to graduate. *See id.* 7:18-8:4.

### C. The Texas Juvenile Court Entered a Dependency Declaration and Made the Requisite SIJ Findings

69.   At the conclusion of the hearing, the Texas Juvenile Court made the following

findings:

> Court finds that the—the [Plaintiff] is a resident of Harris County, Texas. Court finds that the child's previous country of residence was Honduras. Court finds that the child is under the age of 21 and unmarried. Court finds that the child was the subject of abuse, neglect and/or abandonment as defined by State Law. Court finds that it is not in the child's best interest to be returned to Honduras. Court finds that the child is entitled to Special Immigrant Status as defined by Section 101(a)(27)(J) of the Immigrant and Naturalization Act.

*Id.* 8:17-9:3.

70.   On the same day, September 6, 2016, the Texas Juvenile Court entered a

declaratory judgment. Ex. 2. The judgment found Plaintiff dependent upon the Juvenile Court

in accordance with the laws of the State of Texas while she is residing in Texas. The judgment

also included numerous references and citations to Texas law.

71.   As an initial matter, the Juvenile Court expressly stated that it had "subject matter

jurisdiction to enter Declaratory Judgments to declare rights, status, and other legal relations

regarding those persons over whom this court has personal jurisdiction pursuant to the Texas

Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies

Code." Ex. 2 at 2. It also explained that it had "jurisdiction under the State law to make judicial

determinations about the custody and care of juveniles." *Id.*

-18-

72.     Additionally, the Juvenile Court stated that Plaintiff is "dependent upon this juvenile court in accordance with the laws of the State of Texas while she is residing in Texas." *Id.* The Court further expressly found that Plaintiff "has been abused, abandoned, and neglected … pursuant to TEX. FAM. CODE §§ 15[2].102(1) and 2[6]1.001(1), (4)."

73.     Specifically, the judgment found:

> [Plaintiff] was abused and neglected by her mother … whose boyfriend … sexually abused [Plaintiff] and who did not protect [Plaintiff] from such abuse after learning about it.

Ex. 2, at 2. The judgment further found:

> [Plaintiff] was abandoned and neglected by her father … who has not financially or emotionally supported [Plaintiff] since birth.

*Id.*

74.     The Juvenile Court also found that Plaintiff could not reunify with either her mother or her father because her mother had "abused and neglected" Plaintiff and her father had "abandoned and neglected" Plaintiff. *Id.* at 3.

75.     The Court concluded that:

> [I]t is not in [Plaintiff's] best interest to be returned to her country of last habitual residence, Honduras, because she was abused, neglected and abandoned by her parents in that country and has no one to protect her and care for her in Honduras.

*Id.*

## IV.    USCIS Unlawfully Denied Plaintiff's Petition For SIJ Status

76.     In September 2016, Plaintiff filed (through pro bono counsel) an I-360 Petition for Special Immigrant Juvenile Status. *See* Ex. 1, I-360 Petition. Along with her I-360 Form, Plaintiff filed a certified copy of the Texas Juvenile Court declaratory judgment and a copy of Plaintiff's birth certificate with certified English translation. *See* Ex. 6 at 5.

77.    Plaintiff met (and continues to meet) all of the criteria for SIJ eligibility: (1) she was seventeen years old when she filed the I-360 Petition and is unmarried; (2) the Texas Juvenile Court declared her dependent on the Court; (3) the Texas Juvenile Court found that Plaintiff's "reunification with one or both of her parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"; and (4) the Texas Juvenile Court found "that it is not in [Plaintiff]'s best interest to be returned to Honduras, her country of nationality and her last habitual residence." Ex. 2, at 2-3.

78.    More than a year and a half after Plaintiff filed the I-360 Petition—well in excess of the 180-day adjudication deadline imposed on USCIS by statute, 8 U.S.C. § 1232(d)(2)— USCIS's Houston, Texas Field Office notified Plaintiff of USCIS's intent to deny her petition. *See* Ex. 6. The Field Office acknowledged that the Juvenile Court found Plaintiff dependent upon that court "in accordance with the laws of the State of Texas." *Id.* at 10. But the Field Office asserted that the Juvenile Court nevertheless "did not make a qualifying dependency declaration," *id.* at 11, because the declaratory judgment "does not cite to any specific Texas child welfare law or precedents for dependency or custody (conservatorship) that supports" the Juvenile Court's finding of dependency, *id.* at 10.

79.    The Field Office stated that "where the order itself is not sufficient," an immigrant seeking SIJ status "should submit court records that contain the supporting evidence for the court's findings." *Id.* at 11. The Field Office asserted that, without such evidence, "the present record does not demonstrate that the court order was sought primarily to obtain relief from parental abuse, neglect, abandonment, or a similar basis under state law, and not primarily to obtain lawful permanent residency in the United States." *Id.* at 12.

80.     The Field Office then invited Plaintiff to submit additional documentation
showing eligibility for SIJ status.  *Id.*

81.     By letter dated June 21, 2018, Plaintiff (through pro bono counsel) did just that.
*See* Ex. 8, Letter to USCIS.  Plaintiff submitted a certified copy of her petition for a declaratory
judgment, a certified copy of Plaintiff's affidavit in support of the declaratory judgment petition,
and an official transcript of the September 6, 2016 Texas Juvenile Court hearing.  *Id.* at 11.

82.     Plaintiff's cover letter explained that the record set forth a reasonable factual basis
for the Juvenile Court's findings that (1) reunification with Plaintiff's mother is not viable due to
abuse and neglect, (2) reunification with Plaintiff's father is not viable due to abandonment and
neglect, and (3) it is not in Plaintiff's best interest to return to Honduras.  *Id.* at 2.  Accordingly,
the letter continued, the record establishes that the declaratory judgment was "sought for relief
from abuse, neglect, abandonment, or a similar basis under State law."  *Id.*  The letter observed
that the declaratory judgment petition stated that Plaintiff sought the judgment to "prevent
further harm to[herself]" and clearly set forth the legal and factual bases for the Juvenile Court's
order.  *Id.*  The letter also pointed to Plaintiff's affidavit in support of her declaratory judgment
petition, which "set[] the bases for non-viability of parental reunification by setting forth specific
details regarding her father's neglect and abandonment, and mother's neglect and abuse in
Honduras."  *Id.*  Finally, the letter described how the hearing transcript further demonstrated that
the Juvenile Court had a factual and legal basis for its findings.  *Id.* at 3-5.

83.     Next, the letter explained that the Juvenile Court had made a qualifying
dependency finding.  The letter observed that the declaratory judgment proceeding took place
pursuant to the Texas Uniform Declaratory Judgments Act, and it emphasized that both the
declaratory judgment petition and the judgment contain citations to the Texas Family Code and

the Texas Uniform Declaratory Judgments Act. *Id.* at 5-6, 8-9. In addition, the letter described

how the Juvenile Court had properly exercised jurisdiction over the declaratory judgment action.

*Id.* at 6-7, 10-11.

84.    On July 27, 2018, the Houston Field Office issued a notice of USCIS's denial of

Plaintiff's SIJ petition. *See* Ex. 9, USCIS I-360 Denial. The Field Office gave two reasons for

that conclusion: First, it asserted that the "Declaratory Judgment does not contain a qualifying

declaration of juvenile dependency or placement of child custody" because it does not

"specifically reference any state law on juvenile dependency under which the district court's

determination was made" and "does not contain any custody placement." *Id.* at 6-7. Second, the

Field Office asserted that there was insufficient evidence "of the reasonable factual basis relied

upon by the court in making its qualifying declaration of juvenile dependency." *Id.* at 7.

85.    In September 2018, Plaintiff appealed the Field Office's denial of her SIJ petition

to the AAO of USCIS.

86.    On February 19, 2019, the AAO issued a final decision in Plaintiff's case,

denying her petition for SIJ status. Ex. 3. The AAO found that Plaintiff was ineligible for SIJ

status because, according to the AAO, there was no qualifying declaration of dependency or

placement of custody. It further found that the request for SIJ classification was not bona fide

because there was "insufficient evidence to establish that the Declaratory Judgment was sought

to provide relief from parental mistreatment, as opposed to obtain an immigration benefit." *Id.* at

2-4.

87.    As to the declaration of dependency or placement of custody, the AAO

recognized that the Juvenile Court had declared that Plaintiff was "dependent upon this juvenile

court in accordance with the laws of the State of Texas,"[9] but the AAO found the declaratory judgment defective because it "did not specify the state child welfare law that it applied in reaching" that determination. *Id.* at 3. Thus, the AAO concluded that the record did not demonstrate that the Juvenile Court had "issued a qualifying dependency declaration or custody placement in accordance with state law." *Id.*

88.     In an attempt to rationalize its conclusion, the AAO cited 8 U.S.C. § 1101(a)(27)(J)(i), 8 C.F.R. § 204.11(c)(3), and the *USCIS Policy Manual*, at J.3(A)(2). *Id.* at 3. None of those citations require juvenile courts to provide technical citations to state laws when issuing dependency declarations or custody placements. The AAO also cited *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018), for the proposition that the juvenile court's dependency declaration must meet the requirements of the statute and the regulation. *Id.* at 2. *Budhathoki* states that for an order to constitute a qualifying dependency declaration, "placing the child in the custody of someone or some entity is not required, but at least the person must be declared to be dependent on the court." 898 F.3d at 513. That is precisely what occurred here.

89.     With respect to its conclusion that Plaintiff's request for SIJ classification was not bona fide, the AAO pointed to a single comment in the hearing transcript, in which the Juvenile Court judge had simply stated that Plaintiff was "entitled to [SIJ] status." *Id.* at 4. The AAO interpreted that sentence as "suggest[ing] that the hearing, and subsequent Declaratory Judgment, principally concerned [Plaintiff's] eligibility for a benefit under federal immigration law, as opposed to a request for protection under the state child welfare laws." *Id.* But that conclusion was inconsistent with both (a) the AAO's acknowledgement that the Juvenile Court had

---

[9] The TVPRA removed the requirement that the immigrant be "deemed eligible by [the state juvenile] court for long-term foster care." Pub. L. No. 110-457, § 235. All that is required is that she be declared "dependent" on the Juvenile Court, and that is what the Juvenile Court did.

determined Plaintiff "was subjected to abuse, abandonment, and neglect by her parents," and (b) the AAO's statement that it did not question the "facts as articulated in the record." *Id.* at 4-5.

90.     To support its not bona fide conclusion, the AAO cited 8 U.S.C. § 1101(a)(27)(J)(i) and the *Policy Manual*, at J.2(A), (D)(5), neither of which prohibit juvenile courts from referencing SIJ status.

## FIRST CLAIM FOR RELIEF

### USCIS'S DECISION IS CONTRARY TO LAW
#### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

91.     Plaintiff incorporates and realleges every allegation contained in the preceding paragraphs as though fully set forth herein.

92.     Under the APA, "[t]he reviewing court shall ... hold unlawful and set aside agency action ... found to be ... not in accordance with law." 5 U.S.C. § 706(2)(A).

93.     USCIS's denial of Plaintiff's petition for SIJ status is contrary to law for several reasons.

94.     *First*, USCIS's denial is based on the failure to satisfy "requirements" that are not contained in the INA, which is the governing law. An agency's decision cannot stand when it "adds an additional requirement ... not found within the text" of an applicable statute or regulation. *Huashan Zhang v. U.S. Citizenship & Immigration Servs.*, 344 F. Supp. 3d 32, 49 (D.D.C. 2018) (overturning USCIS decision for that reason). That is because where Congress carefully enumerates some statutory limitations, but omits others, the natural inference is that the omission was deliberate. *See, e.g., Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) ("The expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*)."). Accordingly, an agency may not take it upon itself to go beyond the statute's text and impose an additional requirement that Congress did not impose. *See, e.g., Indep. Ins. Agents of Am., Inc. v.*

-24-

*Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (rejecting an agency's interpretation in light of the *expressio unius* canon). The AAO's decision does exactly that, by unlawfully engrafting an additional, extra-textual requirement that the state juvenile court expressly provide citations to state law when making its findings.

95.     Congress carefully delineated in the SIJ statute the requirements for SIJ eligibility, including that a state juvenile court declare the immigrant dependent on that court or place the immigrant in the custody of a state agency or appointed individual. 8 U.S.C. § 1101(a)(27)(J)(i)-(ii). The statute does not include any requirement that the predicate state-court determination include a technical citation to a specific provision of state law. Nor do the regulations. Yet the agency imposed just such a requirement here: The Juvenile Court expressly found that Plaintiff was "dependent upon this juvenile court in accordance with the laws of the State of Texas," Ex. 2 at 2, but the agency rejected Plaintiff's SIJ petition because the state court "did not specify the state child welfare law that it applied in reaching" its dependency determination, Ex. 3 at 3.

96.     *Second*, both the AAO's state-law citation requirement and its requirement that the juvenile court not mention the SIJ program contravene the INA's SIJ provisions by usurping the critical collaborative role for state juvenile courts that the statute contemplates. The statutory regime by its terms allocates to state juvenile courts the responsibility for declaring an immigrant child "dependent" on that court, as well as the responsibility for making non-viability and best-interest findings. 8 U.S.C. § 1101(a)(27)(J)(i). The statutory framework thus expressly depends on state courts' making the requisite findings for SIJ status.

97.     The AAO's decision upends Congress's carefully crafted division of labor and impermissibly intrudes on matters that Congress explicitly left to state courts. Congress did not

mandate that state juvenile courts include state law citations in their findings or use federally

dictated wording in reaching their decisions.  In that way, Congress avoided intruding upon a

traditional sphere of state-court authority and expertise: family-law matters.  *See Perez v.*

*Cuccinelli*, 949 F.3d 865, 876 (4th Cir. 2020) (en banc) (finding that "in defying the plain

language of the SIJ provision, USCIS's interpretation of [the regulations] impermissibly intrudes

into issues of state domestic relations law" by "demand[ing] rulings ... that state courts may be

unwilling or unable to render").

     98.    The AAO's state-law-citation requirement not only imposes a non-statutory

requirement, it also effectively presumes that state courts are *not* properly deciding family-law

matters pursuant to state law unless the state juvenile court affirmatively proves otherwise by

including precise statutory citations.

     99.    By prohibiting state court references to SIJ status, the AAO's decision is also

inconsistent with Congress's expectation that juvenile courts make findings that constitute the

requirements for SIJ status eligibility, without second guessing by the federal Defendants.

Contrary to the AAO's decision, nothing in the governing law requires a state court to ignore or

pretend to ignore the statutory framework in which the state court's findings play a role.  The

Juvenile Court's comment regarding SIJ status simply reflects the court's understanding of the

SIJ statute, which is fully consistent with the statutory framework that Congress mandated.

## SECOND CLAIM FOR RELIEF

### USCIS'S DECISION IS ARBITRARY AND CAPRICIOUS
### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

     100.    The foregoing paragraphs are incorporated by reference as if set forth fully herein.

101.    Under the APA, "[t]he reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

102.    The "requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995). In particular, the agency must "provide an explanation that will enable [a] court to evaluate the agency's rationale at the time of decision," and which "must minimally contain a rational connection between the facts found and the choice made." *Id.* (internal quotations omitted). An agency decision that "fail[s] to consider an important aspect of the problem" or a "relevant factor[]," or that "relie[s] on factors which Congress has not intended it to consider," must be struck down. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). USCIS's denial of Plaintiff's application for SIJ status is arbitrary and capricious, because it constitutes unreasoned and irrational decision-making in multiple respects.

103.    First, in concluding that there was no qualifying dependency declaration, the AAO cited Section 101(a)(27)(J) and 8 C.F.R. § 204.11. *See* Ex. 3 at 2-3. But the AAO did not explain how either the statute or the regulation imposes an obligation on a state court to specifically cite the state statutes on which it is relying. As set forth above, *supra* ¶¶ 94-97, neither the statute nor the regulation expressly imposes such a requirement. The AAO also cited *Budhathoki*, but the AAO did not explain how that case demonstrated that there was no qualifying dependency declaration here. *See* Ex. 3 at 2. As set forth above, *supra* ¶88, it does not.

104.     It is particularly irrational to deny SIJ status based on a lack of citations to state law in a case like this one, where the official state court records provided to USCIS—including the declaratory judgment petition and declaratory judgment order—*do* provide specific citations to relevant provisions of the Texas Family and Civil Practice and Remedies Codes. *Supra* ¶¶ 57-63; 69-74. Moreover, the factual basis underpinning the Texas Juvenile Court's dependency determination was undisputedly established by the state court records presented to USCIS, and it was plain that the Texas Juvenile Court weighed the relevant facts before issuing its ruling. Indeed, the Texas Juvenile Court expressly took judicial notice of Plaintiff's Affidavit and asked questions regarding her abuse, abandonment, and neglect throughout the hearing. *See* Ex. 7.

105.     Second, the AAO did not provide any rational justification for its conclusion that a SIJ petition is not bona fide if the juvenile court comments that the child is eligible for SIJ status. On its face, the Texas Juvenile Court's comment that Plaintiff was "entitled to [SIJ] status" is simply a recognition of the obvious—that the court's findings rendered Plaintiff eligible for SIJ status. The AAO's decision regarding the Juvenile Court's reference to SIJ status ignores the fact that the federal statute effectively *asks* state courts to make findings that are foundational in federal immigration law.

106.     Nor did the AAO explain how the SIJ statute supports granting consent only if the state court is ignorant—or pretends to be ignorant—of the very federal program in which it plays a critical role, or how such a requirement furthers any legitimate policy interest.

107.     The AAO purported to find support for its prohibition on state courts referencing SIJ status in the legislative history of a previous version of the statute. *See* Ex. 3 at 4 (citing H.R. Conf. Rep. No. 105-405, at 130 (1997)). But even if legislative history were relevant, it provides no such support. The cited Conference Report provides that the statute "require[es] the Attorney

General [now the Secretary of Homeland Security] to determine that neither the dependency

order nor the administrative or judicial determination of the alien's best interest was sought

*primarily* for the purpose of obtaining the status of an alien lawfully admitted for permanent

resident, rather than for the purpose of obtaining relief from abuse or neglect." H.R. Conf. Rep.

No. 105-405, at 130 (1997) (emphasis added).   Congress's concern was that foreign students had

gained SIJ status absent any showing that they had been maltreated. *See supra* ¶ 28.   Nothing in

the legislative history suggests that Congress intended to preclude SIJ status for an immigrant

who had been abandoned, abused, or neglected merely because a state court acknowledged the

existence of the SIJ statute and commented on a juvenile's entitlement to such status.   To the

contrary, the federal statute expects state courts to play a role in the SIJ system by making

findings that form the basis of SIJ eligibility.

108.    Third, to support both its state-law citation requirement and its prohibition on

state court references to SIJ status, the AAO cited the *USCIS Policy Manual*, but it failed to

identify any particular language that supports its position. Ex. 3, at 2-3.   In any event, the *Policy*

*Manual* does not carry the force of law. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587

(2000) "([P]olicy statements, agency manuals, and enforcement guidelines, all … lack the force

of law.").

109.    At the time of the AAO's decision, in a provision promulgated without notice and

comment and after Plaintiff submitted her SIJ petition, the *Policy Manual* simply stated that the

juvenile court order "must provide the required [findings] regarding dependency or custody" and

"should use language establishing that the specific findings (conclusions of law) were made

under state law." 6 *USCIS Policy Manual* J.3(A)(2), https://www.uscis.gov/policy-

manual/volume-6-part-j-chapter-3. As explained above, *supra* ¶¶ 69-74, the declaratory

judgment from the Texas Juvenile Court did that in multiple ways.  It cited to the Texas Uniform

Declaratory Judgments Act; declared Plaintiff "dependent upon this juvenile court in accordance

with the laws of the State of Texas"; and cited provisions of the Texas Family Code as support

for its factual findings that Plaintiff was abused, abandoned, and neglected.  The *Policy Manual*

thus provides no support for the AAO's conclusion that there was no qualifying dependency

declaration.

110.    At the time of the AAO's decision, in a provision promulgated after Plaintiff filed

her SIJ petition, the *Policy Manual* stated that USCIS will consent to SIJ classification only if the

request is "bona fide," with "bona fide" meaning "that the juvenile court order was sought to

obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not

primarily or solely to obtain an immigration benefit." *Id.* J.2(D)(5).[10]  The *Manual* then

explained that "the factual basis of each of the required findings is evidence that the request for

SIJ classification is bona fide." *Id.*  Here, the AAO does not dispute the fully-developed record,

which provided a reasonable factual basis for each of the Juvenile Court's findings, just as the

*Policy Manual* requires.  Plaintiff's declaratory judgment petition specifically sought "an order

from the court to prevent further harm" to Plaintiff; the record supported the Juvenile Court's

findings of abuse, abandonment, and neglect, as well as its best interest determination; and

USCIS did "not question the unfortunate facts as articulated in the record." *See supra* ¶¶ 57-74;

89.  Thus, the AAO irrationally concluded that Plaintiff's application was not bona fide.

111.    Fourth, not only has the agency failed to articulate any colorable legal basis for its

new extra-statutory requirements, it has not even tried to articulate a rational policy reason for

---

[10] *See* https://web.archive.org/web/20170501013430/https://www.uscis.gov/policymanual/HTM
L/PolicyManual-Volume6-PartJ-Chapter2.html.

-30-

requiring state courts to cite to specific provisions of state law or prohibiting them from referencing SIJ status.

112.    It is self-evident that a state juvenile court is proceeding pursuant to state law when it declares that a juvenile is dependent on the court.  Making such determinations is the traditional province of state, not federal, government.  Requiring a state juvenile court to prove via technical citations that it is indeed proceeding pursuant to state law arbitrarily and unnecessarily imposes non-statutory hurdles on SIJ petitioners.  Such a requirement is, at best, simply make-work and at worst an attempt to flout the statute and disregard the intent of Congress.

113.    Similarly, prohibiting a state court from referencing SIJ status disregards Congress's expectation that state juvenile courts' findings are the predicate for federal SIJ petitions.  It makes no sense to require state courts to ignore or pretend to ignore that statutory framework.

114.    Finally, the AAO's decision is arbitrary and capricious because it fails to acknowledge or explain that the decision conflicts with principles of federalism and comity. Although the Full Faith and Credit Act does not directly "apply to federal agencies examining state court proceedings," such agencies "must consider … the policies" animating that Act, "such as repose and concerns about federalism," which "favor[] full faith and credit to the state orders." *Budhathoki*, 898 F.3d at 512 (citation omitted).  Here, however, the AAO disregarded the state court's dependency declaration because the Texas court order purportedly did not include technical citations to a particular state law—even though that is not a requirement for a valid opinion under state law and even though the order made clear that it was applying Texas law. *See* Tex. Fam. Code § 105.006 (specifying the required "contents of a final order," none of

which requires a citation to a particular state law provision).  And the agency did so without even

acknowledging (much less justifying) its departure from the background full-faith-and-credit

principle to the contrary.

115.     Federal tribunals "have no power to tell state courts how they must write their

opinions." *Coleman v. Thompson*, 501 U.S. 722, 739 (1991).  "[F]ederalism and comity

concerns" preclude federal bodies from "impos[ing] mandatory opinion-writing standards on

state courts." *Johnson v. Lee*, 136 S. Ct. 1802, 1807 (2016).  The AAO's decision fails to

acknowledge, much less explain, its conflict with that rule.  And so at the very least, the agency's

"fail[ure] to adequately consider [that background] principle" of law means that its decision

cannot stand.  *Confederated Tribes of Coos, Lower Umpqua & Siuslaw Indians v. Babbitt*, 116 F.

Supp. 2d 155, 164 (D.D.C. 2000).  By disregarding state court dependency declarations that do

not cite to a state child welfare law, the agency effectively assumes that the state court is *not*

acting pursuant to its state-law authority until the court proves otherwise, defying principles of

federalism and comity.  *DeNaples v. Office of the Comptroller of the Currency*, 706 F.3d 481,

491 (D.C. Cir. 2013) ("[W]e expect agencies will heed the nuances of federalism.").

## THIRD CLAIM FOR RELIEF

### USCIS'S DECISION IS ARBITRARY AND CAPRICIOUS AS AN UNEXPLAINED RETROACTIVE APPLICATION OF A NEW POLICY
### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

116.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

117.     The AAO's decision purported to find support for its state-law citation

requirement and its prohibition on state court references to SIJ status in the *USCIS Policy

Manual*. *See* Ex. 3 at 2-4.  But as set forth above, the *Policy Manual* does not support the AAO's

decision, and even if it did, that would not be controlling here because the provisions cited by the

AAO were issued in October 2016, *after* Plaintiff filed her SIJ petition. In fact, the AAO's decision constitutes an arbitrary and capricious retroactive application of a new policy.

118.    At the time the Texas Juvenile Court ruled in Plaintiff's case, the agency routinely *granted* SIJ petitions based on state court opinions that lacked specific citations to state law and petitions based on state court opinions when the state court, either in the opinion or at a hearing, referenced SIJ classification. *See, e.g.*, Ex. 10, Decl. of Richard Caldarone. Moreover, at that time, no published AAO decision included such requirements. Nor did any publicly available materials from the agency.

119.    An agency action that retroactively applies a new policy without acknowledgment or explanation of that retroactivity is arbitrary and capricious and must be set aside. 5 U.S.C. § 706(2)(A). When an agency applies a new rule, it "must at least display awareness that it is changing position and show that there are good reasons for the new policy." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (internal quotation marks omitted). "In explaining its changed position, an agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Id.* (internal quotation marks omitted). "[A]n unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Id.* (internal quotation marks omitted).

120.    Here, the AAO offered no acknowledgment that the agency was changing its position—by imposing a state-law citation requirement and a prohibition on state court references to SIJ status not previously imposed—let alone a reasoned explanation for those new policies. To the contrary, the AAO's only discussion of this issue simply denied that the *USCIS Policy Manual* provisions represented a new policy at all. Ex. 3, at 3. But, as explained above

(¶¶ 108-110; 117-118), the agency's assertion that its state-law citation rule and prohibition on SIJ status references predated Plaintiff's SIJ petition is simply false.

121.    Additionally, the AAO's decision failed to account for the reliance interests of Plaintiff, who of course was unaware of the yet-to-be-announced requirements at the time she filed her I-360 petition and at the time she obtained relief from the state juvenile court. There was thus no reason for her counsel to urge the Texas Juvenile Court to include a citation to specific state laws.

122.    Plaintiff has been particularly prejudiced by the agency's arbitrary, abrupt, and retroactive change in policy, because there is no available mechanism for her to now obtain an order from the Texas Juvenile Court providing the purportedly required citations or addressing the Juvenile Court's prior reference to SIJ status. By the time the agency issued its denial of SIJ status, Plaintiff had aged out of the jurisdiction of the Texas Juvenile Court (but not out of eligibility for SIJ status, thanks to the TVPRA's age-out protections, *supra* ¶ 33). *See In re J.L.E.O.*, No. 14-10-00628-CV, 2011 WL 664642, at *2 & n.5 (Tex. Ct. App. Feb. 24, 2011).

123.    In sum, the agency's arbitrary and capricious denial of Plaintiff's SIJ petition cannot stand.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court grant the following relief:

(a) Vacate, "hold unlawful," and "set aside" USCIS's decision pursuant to 5 U.S.C. § 706(2).

(b) Declare that USCIS may not deny Special Immigrant Juvenile status on the basis that the predicate state-court order does not expressly cite a particular provision of state law.

(c) Declare that USCIS may not deny Special Immigrant Juvenile status on the basis

-34-

that the predicate state-court proceedings reference Special Immigrant Juvenile
status.

(d) Declare that Plaintiff is entitled to Special Immigrant Juvenile status pursuant to
Section 1101(a)(27)(J).

(e) Award Plaintiff her costs and reasonable attorney's fees in connection with this
action, pursuant to 28 U.S.C. § 2412 and any other applicable authority; and

(f) Grant such other relief as the Court deems just and proper.

Dated: August 20, 2020                    Respectfully submitted,

Garret Rasmussen (DC Bar No. 239616)
Sarah H. Sloan (*Pro Hac Vice pending*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, DC  20005
Telephone:        +1 202 339 8400
Facsimile:        +1 202 339 8500

Rebecca L. Greene (*Pro Hac Vice pending*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone: +1 212 506 5061
Facsimile: +1 212 506 5151

Richard Caldarone (DC Bar No. 989575)
TAHIRIH JUSTICE CENTER
6400 Arlington Blvd., Suite 400
Falls Church, VA  22042
Telephone:        +1 571 282 6161
Facsimile:        +1 571 282 6162

Javier Arturo Dominguez
TAHIRIH JUSTICE CENTER
1717 St. James Place, Suite 450
Houston, TX 77056
Telephone:        +1 713 496 0100
Facsimile:        +1 713 481 1793

Redacted
Exhibit 1

Department of Homeland Security
U.S. Citizenship and Immigration Services

OMB No. 1615-0020; Expires 03/31/2015
**I-360, Petition for Amerasian,
Widow(er), or Special Immigrant**

START HERE - Type or print in black ink

| For USCIS Use Only | |
|---|---|

## Part 1.   Information About Person or Organization Filing This Petition

(Individuals use the top name line; organizations use the second line.) If you are a self-petitioning spouse or child and do not want USCIS to send notices about this petition to your home, you may show an alternate mailing address here. If you are filing for yourself and do not want to use an alternate mailing address, skip to Part 2.

**1a.** Family Name ▓▓▓▓▓▓▓▓▓

**1b.** Given Name ▓▓▓▓▓

**1c.** Middle Name ▓▓▓▓

**2.** Company or Organization Name

**3.** Address - C/O
Chloe Walker, Tahirih Justice Center

**4.** Street Number and Name
1717 Saint James Place

**5.** Apt. Number
450

**6.** City
Houston

**7.** State or Province
TX

**8.** Country
USA

**9.** Zip/Postal Code
77056

**10.** U.S. Social Security Number

**11.** A-Number ▓▓▓▓▓▓

**12.** IRS Tax No.  (if any)

**For USCIS Use Only**

Returned

Receipt

Resubmitted

Reloc Sent

Reloc Rec'd

☐ Petitioner/ Applicant Interviewed
☐ Beneficiary Interviewed

☐ I-485 Filed Concurrently
☐ Bene "A" File Reviewed

Classification

Consulate

Priority Date

Remarks:

Action Block

## Part 2.   Classification Requested (Check one):

☐ **a.**  Amerasian

☐ **b.**  Widow(er) of a U.S. citizen

☒ **c.**  Special Immigrant Juvenile

☐ **d.**  Special Immigrant Religious Worker

   Will the alien be working as a minister?   ☐ Yes   ☐ No

☐ **e.**  Special Immigrant based on employment with the Panama Canal Company, Canal Zone Government, or U.S. Government in the Canal Zone

☐ **f.**  Special Immigrant Physician

☐ **g.**  Special Immigrant International Organization Employee or family member

☐ **h.**  Special Immigrant Armed Forces Member

☐ **i.**  Self-Petitioning Spouse of Abusive U.S. Citizen or Lawful Permanent Resident

☐ **j.**  Self-Petitioning Child of Abusive U.S. Citizen or Lawful Permanent Resident

☐ **k.**  Special Immigrant Afghanistan or Iraq National who worked with the U.S. Armed Forces as a translator

☐ **l.**  Special Immigrant Iraq National who was employed by or on behalf of the U.S. Government

☐ **m.**  Other, explain:

**To Be Completed By**
☒ *Attorney or Representative, if any*
Fill in box if Form G-28 is attached to represent the applicant

VOLAG Number

ATTY State License Number
TX 24084031

Form I-360 (03/05/13) N

## Part 3. Information About the Person for Whom This Petition Is Being Filed

| 1a. Family Name *(Last Name)* | 1b. Given Name *(First Name)* | 1c. Middle Name |
|---|---|---|
| ████ | ████ | ████ |

**2.**   Address - C/O

| 3a. Street Number and Name | 3b. Apt. Number |
|---|---|
| ████ | ████ |

| 4. City | 5. State or Province |
|---|---|
| Houston | TX |

| 6. Country | 7. Zip/Postal Code |
|---|---|
| USA | 77083 |

| 8. Date of Birth *(mm/dd/yyyy)* | 9. Country of Birth | 10. U.S. Social Security Number | 11. A-Number *(if any)* |
|---|---|---|---|
| | Honduras | None | ████ |

**12.** Marital Status: ☒ Single   ☐ Married   ☐ Divorced   ☐ Widowed

**13.** Complete the items below if this person is in the United States. If an item is not applicable or the answer is "none," leave the space blank. Provide data below for the passport or other document used at the time of last arrival to the United States.

| a. Date of Arrival *(mm/dd/yyyy)*   09/05/2015 | b. I-94 Number |
|---|---|
| c. Passport Number   None | d. Travel Document Number  None |
| e. Country of Issuance for Passport or Travel Document   N/A | f. Expiration Date for Passport or Travel Document |
| g. Current Nonimmigrant Status  No Lawful Status | h. Current Status Expires on *(mm/dd/yyyy)* |

## Part 4. Processing Information

**1.**   Provide information on which U.S. consulate you want notified if this petition is approved, and if any requested adjustment of status cannot be granted.

| a. U.S. Consulate:  City | b. Country |
|---|---|
| | |

**2.**   If you gave a U.S. address in Part 3, print the person's foreign address below. If his or her native alphabet does not use Roman letters, print his or her name and foreign address in the native alphabet.

| a. Name | b. Address |
|---|---|
| | |

| c. | Gender of the person for whom this petition is being filed: | ☐ Male | ☒ Female | |
|---|---|---|---|---|
| d. | Are you filing any other petitions or applications with this one? | ☒ No | ☐ Yes | (How many? _____ ) |
| e. | Is the person this petition is for in deportation or removal proceedings? | ☐ No | ☒ Yes | (Explain on a separate sheet of paper) |
| f. | Has the person for whom this petition is being filed ever worked in the U.S. without permission? | ☒ No | ☐ Yes | (Explain on a separate sheet of paper) |
| g. | Is an application for adjustment of status attached to this petition? | ☒ No | ☐ Yes | (Attach a full explanation) |

Form I-360 (03/05/13) N Page 2

## Part 5.  Complete Only If Filing for an Amerasian

### Section A.  Information about the mother of the Amerasian

| 1a. Family Name | 1b. Given Name | 1c. Middle Name |
|---|---|---|
| | | |

2.  Living?  ☐ No  (Give date of death _____ )   ☐ Yes (Complete address line below)   ☐ Unknown

3. Address

### Section B.  Information about the father of the Amerasian:

If possible, attach a notarized statement from the father regarding parentage. Explain on a separate paper any question you cannot fully answer in the space provided on this form. (Attach a full explanation.)

| 1a. Family Name | 1b. Given Name | 1c. Middle Name |
|---|---|---|
| | | |

| 2. Date of Birth (mm/dd/yyyy) | 3.  Country of Birth |
|---|---|
| | |

4.  Living?  ☐ No  (Give date of death _____ )   ☐ Yes (Complete address line below)   ☐ Unknown

5. Home Address

| 6. Home Phone Number | 7. Work Phone Number |
|---|---|
| | |

8. At the time the Amerasian was conceived:

a.  The father was in the military (indicate branch of service below and give service number here): _____

☐ Army      ☐ Air Force      ☐ Navy      ☐ Marine Corps      ☐ Coast Guard

b. ☐   The father was a civilian employed abroad. Attach a list of names and addresses of organizations which employed him at that time.

c. ☐   The father was not in the military and was not a civilian employed abroad. Attach a full explanation of the circumstances.

## Part 6.  Complete Only If Filing for a Special Immigrant Juvenile Court Dependent

### Section A.  Information about the juvenile

List any other names used

None

Answer the following questions regarding the person for whom the petition is being filed. If you answer "No," explain on a separate sheet of paper.

a.  Have you been declared dependent upon a juvenile court in the United States, or have you been legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court?      ☐ No   ☒ Yes

b.  Has a juvenile court declared that reunification with one or both of your parents is not viable due to abuse, neglect, abandonment, or a similar basis under State law?      ☐ No   ☒ Yes

c.  Have you been the subject of proceedings in which it was determined that it would not be in your best interest to be returned to your or your parent's country of nationality or last habitual residence?      ☐ No   ☒ Yes

Form I-360 (03/05/13) N Page 3

**Part 7.   Complete Only if Filing as a Widow/Widower, a Self-petitioning Spouse of an Abuser, or as a Self-petitioning Child of an Abuser**

**Section A. Information about the U.S. citizen husband or wife who died or about the U.S. citizen or lawful permanent resident abuser**

| 1a. Family Name | 1b. Given Name | 1c. Middle Name |
|---|---|---|
|  |  |  |

| 2. Date of Birth *(mm/dd/yyyy)* | 3. Country of Birth | 4. Date of Death *(mm/dd/yyyy)* |
|---|---|---|
|  |  |  |

**5.** He or she is now, or was, at time of death a (check one):

☐  **a.** U.S. citizen born in the United States

☐  **b.** U.S. citizen born abroad to U.S. citizen parents

☐  **c.** U.S. lawful permanent resident (Provide A#) _____

☐  **d.** U.S. citizen through naturalization (Provide A#) _____

☐  **e.** Other, explain _____

**Section B.   Additional information about you**

| 1. How many times have you been married? | 2. How many times was the person in Section A married? | 3. Give the date and place where you and the person in Section A were married. *(If you are a self-petitioning child, write "N/A")* |
|---|---|---|
|  |  |  |

**4.** When did you live with the person named in Section A?   From *(Month/Year)* _____ until *(Month/Year)* _____

**5.** If you are filing as a widow/widower, were you legally separated at the time of the U.S. citizen's death?        ☐ No    ☐ Yes *(Attach explanation)*

**6.** Give the last address at which you lived together with the person named in Section A, and show the last date that you lived together with that person at that address:

|  |
|---|
|  |

**7.** If you are filing as a self-petitioning spouse, have any of your children filed separate self-petitions?        ☐ No    ☐ Yes *(Show child(ren)'s full names):*

|  |
|---|
|  |

---

**Part 8.   Complete Only If Filing a Special Immigrant Religious Worker Petition**

---

| **Employer Attestation** |
|---|

1. Provide the following information about the prospective employer:

   a. Number of members of the prospective employer's organization:

   b. Number of employees working at the same location where the beneficiary will be employed:

   c. Number of aliens holding special immigrant or nonimmigrant religious worker status currently employed or employed within the past 5 years:

   d. Number of Special Immigrant Religious Worker I-360 and Nonimmigrant Religious Worker I-129 Petitions submitted by the prospective employer within the past 5 years:

2. Has the alien or any of the alien's dependent family members previously been admitted to the United States for a period of stay in the R classification for the last 5 years?      ☐ No      ☐ Yes

If "Yes," complete the table below. List the alien and any dependent family member's prior periods of stay in the R classification in the United States for the last 5 years. Be sure to list only those periods in which the alien and/or family members were actually in the United States in the R classification.

NOTE:  Submit photocopies of Form I-94 (Arrival-Departure Record), Form I-797 (Notice of Action), and/or other USCIS documents identifying these periods of stay in the R classification. If more space is needed, provide the information on additional sheets of paper.

| Alien or Dependent Family Member's Name | Period of Stay *(mm/dd/yyyy)* | |
|---|---|---|
| | From: | To: |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

3. Provide a summary of the type of responsibilities of those employees who work at the same location where the beneficiary will be employed. If additional space is needed, provide the information on additional sheets of paper.

| Position | Summary of the Type of Responsibilities for That Position |
|---|---|
| | |
| | |
| | |
| | |
| | |

4. Describe the relationship, if any, between the religious organization in the United States and the organization abroad of which the alien is a member.

5. Provide the following information about the prospective employment:

   a. Title of position offered.

   b. Detailed description of the alien's proposed daily duties.

**c.** Description of the alien's qualifications for the position offered.

**d.** Description of the proposed salaried and/or non-salaried compensation.

**e.** List of the specific address(es) or location(s) where the alien will be working.

Does the prospective employer attest to all of the requirements described in statements 6 through 12 below?

6. The prospective employer is a bona fide non-profit religious organization or a bona fide organization that is affiliated with the religious denomination and is tax exempt as described in section 501(c)(3) of the Internal Revenue Code of 1986, subsequent amendment, or equivalent sections of prior enactments of the Internal Revenue Code. If the prospective employer is affiliated with the religious denomination, complete the Religious Denomination Certification included in this form.

☐ Yes          ☐ No  (If "No," attach explanation(s))

7. The prospective employer is willing and able to provide salaried and/or non-salaried compensation at a level that the alien and any dependents will not become a public charge.

☐ Yes          ☐ No  (If "No," attach explanation(s))

8. The funds to pay the prospective employee's compensation do not include any monies obtained from the alien, excluding reasonable donations or tithing to the religious organization.

☐ Yes          ☐ No  (If "No," attach explanation(s))

9. If the position is not a religious vocation, the prospective employee will not engage in secular employment, and the prospective employer will provide salaried and/or non-salaried compensation.

☐ Yes          ☐ No  (If "No," attach explanation(s))

10. The offered position is full time, requiring at least an average of 35 hours of work per week.

☐ Yes            ☐ No   (If "No," attach explanation(s))

11. The alien has been a religious worker for at least 2 years immediately before Form I-360 was filed and is otherwise qualified for the position offered.

☐ Yes            ☐ No   (If "No," attach explanation(s))

12. The alien has been a member of the prospective employer's denomination for at least 2 years immediately before Form I-360 was filed.

☐ Yes            ☐ No   (If "No," attach explanation(s))

**I certify or attest under penalty of perjury under the laws of the United States of America that the contents of this attestation, and the evidence submitted, are true and correct.**

Signature

Date *(mm/dd/yyyy)*

Printed Name

Title

Employer/Organization Name

Employer/Organization Street Address *(Do not use a post office or private mail box)*

Suite Number

City

State

Zip Code

Daytime Phone Number *(with area code)*

Fax Number *(if any)*

E-Mail Address *(if any)*

## Religious Denomination Certification

I certify under penalty of perjury under the laws of the United States of America that:

*Name of Petitioning Organization*

is affiliated with:

*Name of Religious Denomination*

and that the attesting *religious* organization within the religious denomination is tax-exempt as described in section 201(c)(3) of the Internal Revenue Code of 1986, or equivalent sections of prior enactments of the Internal Revenue Code. The contents of this certification are true and correct to the best of my knowledge.

Signature

Printed Name

Title

Date *(mm/dd/yyyy)*

Name of Attesting Religious Organization within the religious denomination

Street Address of the Attesting Religious Organization within the religious denomination *(do not use a post office or private mail box)*

Suite Number

City

State

Zip Code

Daytime Phone Number *(with area code)*

Fax Number *(if any)*

E-Mail Address *(if any)*

**Part 9.   Information About the Spouse and Children of the Person for Whom This Petition Is Being Filed**

A widow/widower or a self-petitioning spouse of an abusive citizen or lawful permanent resident should also list the children of the deceased spouse or of the abuser. This includes biological and adopted children and stepchildren.

| 1a. Family Name | 1b. Given Name | 1c. Middle Name |
|---|---|---|

| 1d. Date of Birth *(mm/dd/yyyy)* | 1e. Country of Birth | 1f. Relationship ☐ Spouse ☐ Child | 1g. A-Number |
|---|---|---|---|

| 2a. Family Name | 2b. Given Name | 2c. Middle Name |
|---|---|---|

| 2d. Date of Birth *(mm/dd/yyyy)* | 2e. Country of Birth | 2f. Relationship ☐ Child | 2g. A-Number |
|---|---|---|---|

| 3a. Family Name | 3b. Given Name | 3c. Middle Name |
|---|---|---|

| 3d. Date of Birth *(mm/dd/yyyy)* | 3e. Country of Birth | 3f. Relationship ☐ Child | 3g. A-Number |
|---|---|---|---|

| 4a. Family Name | 4b. Given Name | 4c. Middle Name |
|---|---|---|

| 4d. Date of Birth *(mm/dd/yyyy)* | 4e. Country of Birth | 4f. Relationship ☐ Child | 4g. A-Number |
|---|---|---|---|

| 5a. Family Name | 5b. Given Name | 5c. Middle Name |
|---|---|---|

| 5d. Date of Birth *(mm/dd/yyyy)* | 5e. Country of Birth | 5f. Relationship ☐ Child | 5g. A-Number |
|---|---|---|---|

| 6a. Family Name | 6b. Given Name | 6c. Middle Name |
|---|---|---|

| 6d. Date of Birth *(mm/dd/yyyy)* | 6e. Country of Birth | 6f. Relationship ☐ Child | 6g. A-Number |
|---|---|---|---|

Form I-360 (03/05/13) N Page 10

**Part 9.   Information About the Spouse and Children of the Person for Whom This Petition Is Being Filed** *(Continued)*

A widow/widower or a self-petitioning spouse of an abusive citizen or lawful permanent resident should also list the children of the deceased spouse or of the abuser. This includes biological and adopted children and stepchildren.

| 7a. Family Name | 7b. Given Name | 7c. Middle Name |
|---|---|---|

| 7d. Date of Birth *(mm/dd/yyyy)* | 7e. Country of Birth | 7f. Relationship ☐ Child | 7g. A-Number |
|---|---|---|---|

| 8a. Family Name | 8b. Given Name | 8c. Middle Name |
|---|---|---|

| 8d. Date of Birth *(mm/dd/yyyy)* | 8e. Country of Birth | 8f. Relationship ☐ Child | 8g. A-Number |
|---|---|---|---|

| 9a. Family Name | 9b. Given Name | 9c. Middle Name |
|---|---|---|

| 9d. Date of Birth *(mm/dd/yyyy)* | 9e. Country of Birth | 9f. Relationship ☐ Child | 9g. A-Number |
|---|---|---|---|

**Part 10. Signature**

*Read the information on penalties in the instructions before completing this part. If you will be filing this petition at a USCIS office in the United States, sign below. If you will be filing it at a U.S. consulate or USCIS office overseas, sign in front of a USCIS or consular official.*

I certify, or if outside the United States, I swear or affirm, under penalty of perjury under the laws of the United States of America, that this petition and the evidence submitted with it is all true and correct. If filing this on behalf of an organization, I certify that I am empowered to do so by that organization. I authorize the release of any information from my records, or from the petitioning organization's records, that U.S. Citizenship and Immigration Services needs to determine eligibility for the benefit being sought.

| Signature | Date | Daytime Phone Number | Extension |
|---|---|---|---|
|  | 9/7/16 | | |
| | | Mobile Phone Number ( ) - | |

| Signature of USCIS or Consular Official | Print Name | Date |
|---|---|---|

**NOTE:** If you do not completely fill out this petition or fail to submit required documents listed in the instructions, the person(s) filed for may not be found eligible for a requested benefit, and the petition may be denied.

## Part 11. Signature of Person Preparing Form, If Other Than Above (Sign below)

I declare that I prepared this petition at the request of the above person, and it is based on all information of which I have knowledge.

**Attorney or Representative:** In the event of a Request for Evidence (RFE), may USCIS contact you by fax or e-mail?

☒ Yes   ☐ No

| Signature | | Date 9/7/16 |
| --- | --- | --- |
| Print Your Name<br>Chloe Louise Walker | | E-Mail Address<br>chloew@tahirih.org |
| Firm Name and Address<br>Tahirih Justice Center<br>1717 St. James Place, Suite 450<br>Houston, TX 77056 | | |
| Daytime Phone Number<br>(*Area/Country Codes*) (713) 496-0100 | Fax Number (*if any*) (713) 481-1793 | |

Redacted
Exhibit 2

**ORIGINAL**

8/30/2016 4:33:14 PM
Chris Daniel - District Clerk Harris County
Envelope No. 12452875
By: CLAUDIA MARQUEZ
Filed: 8/30/2016 4:33:14 PM

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

CAUSE NO. ▓▓▓▓▓

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| ▓▓▓▓▓▓▓▓, | § | 315th JUDICIAL DISTRICT |
| | § | |
| | § | |
| A CHILD | § | |
| | § | HARRIS COUNTY, TEXAS |

## DECLARATORY JUDGMENT

On September 6, 2016, the Court heard Petitioner's Petition for Declaratory Judgment.

### Appearances

Petitioner, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, appeared in person and through attorney of record, Chloe L. Walker, and announced ready.

### Jurisdiction

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction over the subject matter and the parties in this case.

### Service

The Court finds that no persons were entitled to citation in this case.

### Jury

A jury was waived, and all questions of fact and of law were submitted to the Court.

### Parties

The court finds that the following individual is the subject of this suit:

Name:            ▓▓▓▓▓▓▓▓▓▓▓▓▓
Sex:             Female
Date of Birth:   ▓▓▓▓▓▓ (age 17)

Cause No. ▓▓▓▓▓; *In re* ▓▓▓
*Declaratory Judgment*                                   Page 1 of 4

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

| | |
|---|---|
| Place of Birth: | San Francisco de Becerrea, Olancho, Honduras |
| Current Residence: | Houston, Harris County, Texas |
| Marital Status: | Unmarried |

*Relief Granted*

IT IS ORDERED as follows:

1) Petitioner is entitled to a finding of her best interests in order to prevent further harm to her;

2) That this District Court of the State of Texas has subject matter jurisdiction to enter Declaratory Judgments to declare rights, status, and other legal relations regarding those persons over whom this court has personal jurisdiction pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code;

3) That this court has personal jurisdiction over ███████████████████, the subject of this suit, as she resides within the geographical boundaries of the State of Texas;

4) That venue in Harris County is proper in this cause as ███████████████, the subject of this suit, resides within the geographical boundaries of Harris County, Texas;

5) That this court is a juvenile court, a court located in the United States having jurisdiction under the State law to make judicial determinations about the custody and care of juveniles;

6) That ██████████████████████ is dependent upon this juvenile court in accordance with the laws of the State of Texas while she is residing in the State of Texas;

8) The Court further finds that the ██████████████████████ has been abused, abandoned, and neglected. Based on evidence presented at the hearing on this case, the Court specifically finds pursuant to TEX. FAM. CODE §§ 151.102(1), 251.001(1), (4):

a. ██████████████████ was abused and neglected by her mother, █████████████████████, whose boyfriend sexually abused ████████████████ and who did not protect ██████████████████ from such abuse after learning about it.

b. ███████████████ was abandoned and neglected by her father, █████████████████, who has not financially or emotionally supported ██████████████████████ since birth.

9)    Based on the above findings, the Court further that the Petitioner, ███████████ ███████████, cannot reunify with her mother, ███████████ ███████████, because she abused and neglected ███████████.

10)    Based on the above findings, the Court further finds that Petitioner, ███████████ ███████████, cannot reunify with her father, ███████████ ███████████, because he abandoned and neglected ███████████.

10)    Based on the above findings, the Court further finds that it is not in ███████████ ███████████'s best interest to be returned to her country of last habitual residence, Honduras, because she was abused, neglected and abandoned by her parents in that country and has no one to protect her and care for her in Honduras.

11)    That the Petitioner, ███████████████████████'s Petition for Declaratory Judgment should in all things be GRANTED.

*Attorney's Fees*

IT IS ORDERED that attorneys fees shall be paid by the party who bore them.

*Costs*

IT IS ORDERED that costs of court are to be borne by the party who incurred them.

The Court finds that ███████████████████████ has been ordered unable to pay costs due to indigency.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Relief Not Granted*

IT IS ORDERED that all relief requested in this case and not expressly granted is denied. All other terms of the prior orders not specifically modified in this order shall remain in full force and effect.

*Date of Order*

SIGNED on                                    SEP 0 6 2016

JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

TAHIRIH JUSTICE CENTER
1717 St. James Place, Suite 450
Houston, TX 77056
Tel: (713) 496-0100
Fax: (713) 481-1793

By:   /s/ Chloe L. Walker
CHLOE L. WALKER
State Bar No. 24084031
E-mail: chloew@tahirih.org
*Attorney for Petitioner*



STATE OF TEXAS
COUNTY OF HARRIS

I, Chris Daniel, District Clerk of Harris County, Texas, certify that
this is a true and correct copy of the original record filed and or recorded
in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this 9/8/16

CHRIS DANIEL, DISTRICT CLERK
HARRIS COUNTY, TEXAS

Deputy

# Redacted
# Exhibit 3

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Administrative Appeals Office
20 Massachusetts Ave., N.W., MS 2090
Washington, DC  20529-2090



U.S. Citizenship
and Immigration
Services

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

HOUSTON TX  77083

DATE:  FEB. 19, 2019

FILE #: ▓▓▓▓▓▓▓▓
PETITION RECEIPT #: ▓▓▓▓▓▓▓▓▓▓
I-290B RECEIPT #: ▓▓▓▓▓▓▓▓▓

IN RE:        Petitioner: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

PETITION:   FORM I-360, PETITION FOR AMERASIAN, WIDOW(ER), OR SPECIAL IMMIGRANT

ON BEHALF OF PETITIONER:

JAVIER ARTURO DOMINGUEZ, ESQUIRE
TAHIRIH JUSTICE CENTER
1717 SAINT JAMES PL STE 450
HOUSTON TX  77056

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case.  If you believe we incorrectly decided your case, you may file a motion requesting us to reconsider our decision, reopen the proceeding, or both.  The requirements for motions are located at 8 C.F.R. § 103.5.  Motions must be filed on a Form I-290B, Notice of Appeal or Motion, **within 33 days of the date of this decision.**  This time period includes three days added for service by mail.

The Form I-290B website (www.uscis.gov/i-290b) contains the latest information on fee, filing location, and other requirements.  **Please do not mail any motions directly to the AAO.**

Thank you,

*Barbara Q Velarde*

Barbara Q. Velarde
Chief, Administrative Appeals Office

 **U.S. Citizenship and Immigration Services**

**Non-Precedent Decision of the Administrative Appeals Office**

MATTER OF ███████

DATE: FEB. 19, 2019

APPEAL OF HOUSTON, TEXAS FIELD OFFICE DECISION

PETITION:   FORM I-360, PETITION FOR AMERASIAN, WIDOW(ER), OR SPECIAL IMMIGRANT

The Petitioner seeks classification as a Special Immigrant Juvenile (SIJ) under sections 101(a)(27)(J) and 204(a)(1)(G) of the Immigration and Nationality Act (the Act), 8 U.S.C. §§ 1101(a)(27)(J) and 1154(a)(1)(G). The Director of the Houston, Texas Field Office denied the Petitioner's Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant (SIJ petition), and the matter is now before us on appeal. On appeal, the Petitioner submits a brief. Upon *de novo* review, we will dismiss the appeal.

## I. LAW

To establish eligibility for SIJ classification, a petitioner must establish that she is unmarried, under 21 years of age, and has been subject to a state court order determining that she cannot reunify with one or both of her parents due to abuse, neglect, abandonment, or a similar basis under state law. Section 101(a)(27)(J)(i) of the Act; 8 C.F.R. § 204.11(c). The petitioner must have been declared dependent upon a juvenile court, or the juvenile court must have placed the petitioner in the custody of a state agency or a guardian appointed by the state agency or the juvenile court. Section 101(a)(27)(J)(i) of the Act. The record must also contain a judicial or administrative determination that it is not in the petitioner's best interest to return to her or her parents' country of nationality or last habitual residence. Section 101(a)(27)(J)(ii) of the Act.

SIJ classification may only be granted upon the consent of the Department of Homeland Security (DHS), through U.S. Citizenship and Immigration Services (USCIS), when the petitioner meets all other eligibility criteria. Section 101(a)(27)(J)(i)-(iii) of the Act. The petitioner bears the burden of proof of demonstrating eligibility by a preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

## II. ANALYSIS

The Petitioner, a native and citizen of Honduras, entered the United States without inspection, admission, or parole in September 2015. She filed the instant SIJ petition in September 2016.

*Matter of* 

## A.  District Court Orders

In September 2016, when the Petitioner was 17 years of age, a District Court for the 313th Judicial District in Harris County, Texas (District Court), issued a Declaratory Judgment finding the Petitioner "dependent upon th[e] juvenile court in accordance with the laws of the State of Texas, while she is residing in the State of Texas."  The District Court further found that the Petitioner was "abused, abandoned, and neglected" pursuant to sections 151.102(1) and 251.001(1), (4) of the Texas Family Code (Tex. Fam. Code), and that reunification with both her mother and her father was not viable on the basis of the abuse, abandonment, and neglect.  The District Court last found that it was not in the Petitioner's best interest to return to her home country of Honduras "because she was abused, neglected[,] and abandoned by her parents in that county and has no one to protect her and care for her" there.

Underlying the District Court's Declaratory Judgment, and also in the record, is a hearing transcript and the Petition for Declaratory Judgment filed by the Petitioner before the court.  The hearing transcript mirrors the contents of the Declaratory Judgment, documenting a short hearing whereby the District Court took testimony and issued its findings.  The Petition likewise mirrors that contained in the Declaratory Judgment, but specifies that the Petitioner sought the judgment pursuant to section 37.004 of the Texas Civil Practice and Remedies Code (Tex. Civ. Prac. & Rem. Code) because she was "in need of an order from the court to prevent further harm to [her] by virtue of [her] circumstances."  The Petition is accompanied by an affidavit from the Petitioner, whereby she described the abuse and neglect she suffered at the hands of her mother, who failed to protect her from sexual abuse, and the abandonment and neglect she suffered at the hands of her father, who failed to support her financially or emotionally or otherwise play a role in her life since birth.

## B.  No Qualifying Declaration of Dependency or Placement of Custody

The Director determined, based on the above evidence, that the District Court's Declaratory Judgment did not contain a qualifying declaration of juvenile dependency or placement of child custody.

For SIJ classification, a juvenile court must have declared the SIJ petitioner dependent on the court, or must have legally committed the petitioner to, or placed the petitioner under the custody of, a state agency or department, or an individual or entity appointed by the state agency or juvenile court.  Section 101(a)(27)(J)(i) of the Act.  The juvenile court's dependency declaration must be made in accordance with state law governing such declarations.  8 C.F.R. § 204.11(c)(3).  While the language of juvenile court orders may vary according to individual state child welfare laws, the record must establish that the juvenile court's dependency declaration meets the requirements of the Act and related regulations. *See Budhatoki v. Nielsen*, 898 F.3d 504, 513, 517 (5th Cir. 2018) (stating that, in the context of SIJ classification, dependency has a "specific federal meaning" and it is not the presence of "formulaic language in . . . state court orders" which will establish a qualifying dependency order); *see also 6 USCIS Policy Manual* J.3(A)(2), https://www.uscis.gov/policymanual

2

*Matter of* ████████

(explaining how USCIS assesses the sufficiency of state court orders under the Act and relevant regulations).

On appeal, the Petitioner asserts that the Director's decision relied on an "improper retroactive application of policy," in that it cited to USCIS Policy Manual provisions regarding eligibility for SIJ classification issued after the filing of her SIJ petition. She similarly asserts that the USCIS Policy Manual provisions regarding SIJ status were an "improper regulatory enactment which failed to comply with rule-making procedures mandated by the Administrative Procedures Act." The Petitioner is correct to the extent that she asserts that the USCIS Policy Manual provisions regarding SIJ status were issued in October 2016, after her submission of her SIJ petition. However, the provisions do not alter or otherwise impose additional eligibility or evidentiary requirements on an SIJ petitioner. Instead, they merely reiterate, and provide additional guidance as to, that required by section 101(a)(27)(J) the Act and 8 C.F.R. § 204.11—both in effect at the time of the submission of the Petitioner's SIJ petition.

In the Declaratory Judgment issued in this case, the District Court declared that the Petitioner was "dependent upon this juvenile court in accordance with the laws of the State of Texas," but did not specify the state child welfare law that it applied in reaching this determination. In the Petition underlying the Declaratory Judgment, the Petitioner cited to section 37.004 of the Tex. Civ. Prac. & Rem. Code; however, section 37.004 does not describe juvenile dependency proceedings or otherwise address the care and custody of juveniles, instead providing for the general right to obtain a declaratory judgment:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code § 37.004 (West 2016). Finally, neither document shows, and the Petitioner does not claim, that the District Court made any ruling on the Petitioner's custody in the Declaratory Judgment or in any other related proceedings, and the remaining evidence of record does not otherwise show that the District Court issued a qualifying dependency declaration or custody placement in accordance with state law, as section 101(a)(27)(J)(i) of the Act and 8 C.F.R. § 204.11(c)(3) require.[1]

---

[1] In her brief on appeal, the Petitioner additionally asserts that the Director's decision erred in relying on unpublished decisions from our office to support the finding that the record did not include a qualifying dependency declaration or custody placement. The Petitioner is correct to the extent that she asserts that our unpublished decisions do not bind USCIS in future adjudications, *see* 8 C.F.R. § 103.3(c), and instead apply existing law and policy to the specific facts of the individual case and may be distinguishable based on the evidence in the record of proceedings, the issues considered, and applicable law and policy. However, the citation to unpublished decisions had no impact on the ultimate outcome in the case, as the Director correctly applied the requirements of section 101(a)(27)(J)(i) of the Act and 8 C.F.R. § 204.11(c)(3).

*Matter of* ████████

## C.  USCIS' Consent is Not Warranted

The Director additionally concluded that, because the District Court's Declaratory Judgment did not contain a qualifying dependency declaration, USCIS' consent was not warranted.

USCIS' consent determination is an acknowledgement that the request for SIJ classification is *bona fide*, such that the petitioner sought the requisite determinations primarily to gain relief from parental abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit.  H.R. Rep. No. 105-405, 130 (1997) (reiterating the overall policy goal and requirement that the requisite SIJ findings be "sought primarily for the purpose of obtaining relief from abuse or neglect," not for "the purpose of obtaining the status of an [individual] lawfully admitted for permanent residence").  To determine if consent is warranted, USCIS first reviews the record to ensure it contains the requisite determinations of juvenile dependency or custody, best interest, and non-viability of parental reunification due to abuse, neglect, abandonment, or a similar basis under state law.  *See* section 101(a)(27)(J)(i)-(iii) of the Act (providing that SIJ classification may only be granted, upon the consent of USCIS, when the petitioner meets all other eligibility criteria); *see also* 6 *USCIS Policy Manual*, *supra*, at J.2(A) (providing that, "[i]f a juvenile court has made certain findings, under state law, on dependency or custody, parental reunification, and the best interests of the child, then the child may be eligible for SIJ classification").  If all the requisite SIJ findings are present, USCIS then reviews the record to ensure that each finding is supported by a reasonable factual basis.  *See* 6 *USCIS Policy Manual*, *supra*, at J.2(D)(5) (providing that, "[i]n order to exercise the statutorily mandated . . . consent function, USCIS requires that the juvenile court order or other supporting evidence contain or provide a reasonable factual basis for each of the findings necessary for classification as an SIJ").  The evidence need not be overly detailed, but must indicate that the juvenile court made an informed decision in order to be considered reasonable.  *Id.*

In the present case, USCIS' consent is not warranted because, as discussed above, the requisite determination of juvenile dependency or child custody was not made, and because there is otherwise insufficient evidence to establish that the Declaratory Judgment was sought to provide relief from parental mistreatment, as opposed to obtain an immigration benefit.  In the hearing transcript, the District Court itself issued its findings and ultimately concluded that the Petitioner was "entitled to Special Immigrant Status as defined by Section 101(a)(27)(J) of the Immigration and Naturalization [*sic*] Act."  This suggests that the hearing, and subsequent Declaratory Judgment, principally concerned the Petitioner's eligibility for a benefit under federal immigration law, as opposed to a request for protection under state child welfare laws.  Accordingly, and in light of the above, the Petitioner has not demonstrated that her request for SIJ classification is *bona fide* and merits USCIS' consent.

## III. CONCLUSION

We acknowledge the District Court's determination that the Petitioner was subjected to abuse, abandonment, and neglect by her parents, and we do not question the unfortunate facts as articulated

*Matter of* ████████

in the record. However, the District Court's Declaratory Judgment lacks a qualifying dependency declaration or custody placement. Because the Petitioner is ineligible on this ground and has not established that her request for SIJ classification is *bona fide*, USCIS' consent to her SIJ classification is not warranted.

**ORDER:**      The appeal is dismissed.

Cite as *Matter of* ████████, ID# ████████ (AAO Feb. 19, 2019)

5

Redacted
Exhibit 4

**NOTICE: THIS DOCUMENT**
**CONTAINS SENSITIVE DATA**

CAUSE NO. ████

| | | |
|---|---|---|
| IN THE INTEREST OF: | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| ████, | § | 315th JUDICIAL DISTRICT |
| | § | |
| | § | |
| A MINOR CHILD, | § | HARRIS COUNTY, TEXAS |
| | § | |

## AFFIDAVIT OF ████
## IN SUPPORT OF HER PETITION FOR DECLARATORY JUDGEMENT

BEFORE ME, the undersigned authority, personally appeared ████
████, the subject of this suit who, by me duly sworn, deposed as follows:

1. "My name is ████. I was born on ████ in Olancho, Honduras. I am 17 years old.

2. The names of my parents are ████ and ████ ████

3. My mother lives in San Francisco de Becerra, Olancho, Honduras.

4. I do not know where my father currently lives. The last place I knew he lived in was in Patuca, Olancho, Honduras.

5. I currently live with a family friend, ████ and her two young sons ████ and ████, at ████, Houston, TX 77083.

6. I am submitting this affidavit in support of my request for a Declaratory Judgement.

7. My parents have been separated for as long as I remember. I lived with my mother in San Francisco de Becerra for all of my life before coming to the United States. I also lived with my seven siblings.

8.  As a child, my siblings and I never knew our father.  My mother told me that my father abandoned us when I was an infant. As a young child, my father never visited me, called me, or supported me. I felt resentment that my father was not a part of my life. No one in my family knew anything about where he was or why he left. All we knew is that he lived in another place. For most of my childhood, my mother believed that he lived in San Francisco de la Paz, Olancho, Honduras. This is the place where my parents met and my father was born.

9.  One day, many years ago, my family went to San Francisco de la Paz to get some official documents.  While we were in town, my mother went to where she believed my father was to ask about him. However, no one knew where he was.

10. One day when I was around 12 or 13 years old, my mother ran into him a market in a town called Juticalpa nearby my hometown.  After realizing it was my father, my mother called me. When my mother called me, she told me that she wanted me to speak to someone on the phone. She put my father on the phone who introduced himself to me and asked if I wanted to see him.  He told me that he was living in Patulca with his uncles which was about two or three hours away on a bus.  Two weeks later, he came to visit me.

11. From that point on, my father and I talked on the phone about once a month. He would ask me how I was doing. He would always say that he was going to send me money for my school expenses, but never did. On the days he promised to send me money, he would call me and make up some excuse, saying it was "bad luck" and that something more important came up.

12. It felt nice finally knowing my father, but he did not feel like my father because we spent so little time together. He did not treat me how a daughter should be treated. He only came

to visit me three times over the years. He never provided me any financial or emotional support.

13. When I was around 14 years old, my mother met my step-father, ███████████. My mother met him through mutual family members and acquaintances at a funeral. That day, he came over to our house and my mother introduced him to us.

14. Soon after, my mother began to go out with him. He began to visit my mother often. He was nice to us at first. Although he still lived with his mother in La Concepcion, Olancho, it was like he lived with us. He was at our house all day and would spend the night often.

15. ███████ did not work. He and his mother were supported by ███████'s other siblings.

16. ███████ was a heavy drinker. After about a year after getting together with my mother, he got very sick from drinking. He was in the hospital for about a month. Because he got ill, he stopped drinking for a short while, but soon returned to his old vice. My mother stayed with him despite his alcoholism.

17. When I was about 15 years old, ███████ tried to sexually abuse me. One day around the end of November 2014, he was spending the night at our house. There were no closed rooms in our house. They are more like open shared rooms that are divided with sheets. I remember that night; I was trying to fall asleep. I was lying in bed, when I felt that someone was close. Then I felt that someone was touching me on my private parts. I started calling out for help. My mother was not responding to my cries for help because she was sleeping. I think that he thought I was sleeping but when I cried for help, he stopped. I told him that I was going to tell my mom what happened. It hurts me to talk about what ███████ did to me.

18. The next morning, he started to stare at me all the time. He looked at me with desire. I called him out, saying "what are you looking at?" and hoping that my mother would overhear. She did. My mom confronted him, but ████████ denied it when my mother confronted him. My mom did not believe me. She believed him.

19. She did not call the police, or take me to the doctor or sought to protect me in any way. She did not even ask me how I was doing or how it felt. This made me feel like I did not have anyone to protect me from him.

20. From that day forward, ████████ would tease me and look at me with desire basically every day that he was in our house.    When he would look at me that way, I felt unsafe. I felt like he was going to try and abuse me again. I wanted him to stop bothering me. And I really did not want him to touch me again.

21. About a week after it happened, I decided to leave my mother's house. Because I had been in contact with my father, I called my father and asked him if I could visit him. He invited me to come on a vacation with him and his family. I was not comfortable telling my father about ████████'s abuse at this time. I just wanted to get away from my mother's house as quickly as possible. I took a bus to El Paraiso, another state in Honduras, where he was on vacation with his wife and his wife's three children.

22. I told my mother that I was leaving since she did not want to separate from ████████, despite what he did to me. My mother's excuse was that she could not leave from ████████ because she was expecting his child. It made me feel really sad that she valued her relationship with ████████ over me because I was her child and he was just the dad of a child she was expecting.

23. The day I arrived in El Paraiso was the first time I met my father's family. It was my father, his new wife ███, her 10 year old daughter and ██'s two older sons who were 18 and 20 years old. I do not remember the names of her sons. They showed me around the three rooms of the small house where they were staying. The night I arrived, we were watching television and preparing dinner.

24. At bed time, I went to my step-sister's room because we were going to share the bunk bed. At that time, my step-sister went to the outhouse and left me in the room alone. Soon after, I felt someone on my bed. At first I thought it was my step-sister, but then I felt that someone was touching me inappropriately on my private parts. I realized it was one of ██'s sons. When I asked him what he was doing, he told me not to say anything. He said "we are going to have fun" and then covered my mouth. I tried to yell at him to stop touching me. He said that no one would hear me because no one was home and I could not yell because he had his hands over my mouth. After that he had sex with me against my will. He left the room and about a half hour later my step-sister came back. I asked her where she had gone but she did not answer me. I felt so much sadness and desperation. I had come to be with my father to escape the abuse of ██████ only to be assaulted by another man. I did not feel safe with my father and his family.

25. Afterwards, I went around the house looking for my dad and there was no one else in the house. I found out later that my father, ███, and her sons had gone to a party after me and my step-sister went to bed.

26. The next morning at dawn, I talked to my father. I told him what ██'s son had done to me. My father told ███. ██ went out to look for her son who was now gone. She tried

calling him but he did not answer and she tried calling his friends, but they did not know where he was.

27. My father said that he wanted to talk to the police about what happened and ▮▮ agreed. They wanted to confront ▮▮'s son over what had happened, but he fled.

28. My father took me to the doctor's office that day. After the doctor's assessment, the doctor told me that nothing happened and that there were no visible signs of harm on my body. My father was relieved to hear that which made me feel like he did not believe me. I did not know what to do because I did not feel safe with my mom and now I did not feel safe with my dad.  At that moment, I just knew that I wanted to leave.  I did not have anywhere else to go except back San Francisco de Becerra.  I asked my father for the bus fare back to my mother's house. That same day, I returned back to San Francisco de Becerra.

29. When I returned to San Francisco de Becerra, I went to my mom's house but ▮▮ was there. I told my mom what happened in El Paraiso but she did not do anything in response. She did not confront my father about what happened El Pairiso. My father tried calling me through my mother's phone five times after I had left. My mother did not answer him, because she knew I was upset and did not want to talk to my father. After that, my father stop trying to call me.

30. My mother still refused to leave ▮▮ and he continued to harass me. He would make sexually suggestive hand gestures at me but he would be sure not to do it in front of my mom.

31. ▮▮ was drinking a lot again. When he would drink, his sexual advances became more aggressive. He would say inappropriate things about me. He would say things about how

good my body looked. I confronted him in front of my mom. █████ did not deny it. He

said that he was drunk and sometimes drunk people say things like that. My mother did not

respond; she would only tell me to not pay attention to him.

32. Over the next few months, I was very uncomfortable and still felt unsafe with █████

around. It got to the point that when he would get drunk, I would go spend the night at my

sister's house. My mother never said anything. My mother never did anything to protect

me. It was not fair that I could not feel safe in my own home.

33. I told my uncles what was going on. I told them what █████ had done to me. However,

they did not confront my mother or █████ either. They all knew that my mother would

never leave █████. They also realized that I could no longer live at home but they were

unwilling to care for me. I had nowhere to go. The only way my uncles knew to help me

was to help me come to the United States.

34. I feel that my mother and father cannot protect me. I was scared to go to the police for what

█████ had done to me. My mother would hate me if I ever reported █████'s abuse.

My mother will always love him no matter what he does. I do not think that the laws in

Honduras could protect me, even less so if my mother does not support me.

35. I left my home in Honduras on August 8, 2015. The journey was challenging physically

and emotionally. I was apprehended by Customs and Border Patrol on September 5, 2015

near Roma, TX. I was placed in the custody of the Office of Refugee Resettlement (ORR).

I lived in an ORR shelter in Driscoll, TX until I was released to live with █████

█████ on approximately December 9, 2015.   I know █████ because my cousin is the

daughter of ███'s aunt.  My mom has been friends with █████ and her family for a long

time. I knew ▮▮▮ when she lived in Honduras. She came to the United States with her

sons a couple of years before I did.

36. Since I have been living here in the United States, I still have not had any contact with my

father. I call my mother every week or two to see how my siblings are doing. My brothers

tell me that my mother is still with ▮▮▮▮▮ and everything remains the same in their

relationship. He is still over at my mother's house all of the time. When I talk to my

mother, I feel that my mother does not emotionally support me. She does not send me any

money. ▮▮▮ is the one who cares and provides for me.

37. I feel happy and safe here in the United States. ▮▮▮ is very supportive. She treats me well

and meets my needs. She sees me as her daughter and I see her as a mother. She always

takes an interest in me. After school she asks how am I doing and advises me to not do bad

things. She tells me that she wants me to study and to be a good person. She talks to me

about church and God. I know that ▮▮▮ works a lot to support me and her two sons.

However, she still makes the time for me. On Saturdays we all go out to dinner as a family

and on Sundays we go to church.

38. I am currently a student at ▮▮▮▮▮▮▮▮▮. I am starting the tenth grade at the end

of August. I love school. Math is my favorite subject. I have made friends and I am trying

my best to learn English. My goal is to graduate from high school. I would like to have a

career as a teacher.

39. This statement was prepared with the help of a Spanish-English interpreter and orally

translated to me in its entirety. I certify under penalty of perjury, under the laws of the

United States of America, that the above statements are true and correct to the best of my

knowledge."

Further affiant sayeth not.

8/11/2016
Date

SIGNED under oath before me on this _____11th_____ day of _____August_____, 2016.

ANA TERESA CASTELLANO
Notary Public, State of Texas
Comm. Expires 05-04-2020
Notary ID 130649930

Notary Public, State of Texas

Redacted
Exhibit 5

5/25/2016 2:47:41 PM
Chris Daniel - District Clerk Harris County
Envelope No. 10820482
By: LONNA EVERS
Filed: 5/25/2016 2:47:41 PM

**NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA**

CAUSE NO. _____

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | § | _____ JUDICIAL DISTRICT |
| ▓▓▓▓▓, | § | |
| | § | |
| | § | |
| A CHILD | § | |
| | § | HARRIS COUNTY, TEXAS |

## PETITION FOR DECLARATORY JUDGMENT

1.      Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas Rules of Civil Procedure.

2.      Petitioner objects to the assignment of this matter to an associate judge for a trial on the merits or presiding at a jury trial.

3.      This suit is brought by ▓▓▓▓▓▓▓▓▓▓ Petitioner, who is a resident of Harris County, Texas, by and through her attorney of record, Petitioner has not been issued a driver's license. Petitioner has not been issued a Social Security number.

4.      Petitioner seeks a declaratory judgment pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code which authorizes a person whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise to request determination by the Court any question of construction or validity arising the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations there under. TEX. CIV. PRAC. & REM. CODE § 37.004. Petitioner seeks a declaratory judgment from this District Court in accordance with the laws of the State of Texas. Petitioner requests that the District Court find::

1) Petitioner is in need of an order from the court to prevent further harm to the child by virtue of the child's circumstances;

2) That this District Court of the State of Texas has subject matter jurisdiction to enter Declaratory Judgments to declare rights, status, and other legal relations regarding those persons over whom this court has personal jurisdiction;

3) That this court has personal jurisdiction over ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉, the subject of this suit, as she resides within the geographical boundaries of the State of Texas;

4) That venue in Harris County is proper in this cause as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉, the subject of this suit, resides within the geographical boundaries of Harris County, Texas;

5) That this court is a juvenile court, a court located in the United States having jurisdiction under the State law to make judicial determinations about the custody and care of juveniles, as such term is defined in 8 CFR § 204.11;

6) That ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ is dependent upon this juvenile court in accordance with the laws of the State of Texas while she is residing in the State of Texas;

7) That reunification with one or both parents of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉ is not viable due to abuse, neglect or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4).

8) That it is not in the best interest of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, the subject of this suit, to be returned to her country of nationality, Honduras, because of abuse, neglect, or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4).

9). No request is made for the award of attorney's fees in this cause. Petitioner has filed an Affidavit of Inability to Pay Court Costs.

Petitioner prays that citation and notice issue as required by law, that the Court render judgment as requested above, and for all further relief authorized by law.

Respectfully submitted,

TAHIRIH JUSTICE CENTER
1717 St. James Place, Suite 450
Houston, TX 77056
Tel: (713) 496-0100
Fax: (713) 481-1793

By: _____
CHLOE L. WALKER
State Bar No. 24084031
E-mail: chloew@tahirih.org
*Attorney for Petitioner*

Redacted
Exhibit 6



U.S. Department of Homeland Security
Houston Field Office
810 Gears Rd Suite 100
Houston, TX 77067-4416

U.S. Citizenship
and Immigration
Services

Date: MAY 2 3 2018

████████████████████████
Houston, TX 77083



MSC ████████

## NOTICE OF INTENT TO DENY
## FORM I-360, PETITION FOR SPECIAL IMMIGRANT JUVENILE

Dear █████████████████████:

Thank you for submitting Form I-360, Petition for Special Immigrant, to U.S. Citizenship and Immigration Services (USCIS). The purpose of this notice is to inform you that it is the intent of USCIS to deny the Form I-360, Petition for Special Immigrant, filed on September 12, 2016, in accordance with Section 101(a)(27)(J) of the Immigration and Nationality Act (INA or Act), as amended.

*Applicable Law*

Section 203(b)(4) of the Act allocates immigrant visas to qualified special immigrant juveniles as described in Section 101(a)(27)(J) of the Act. Section 101(a)(27)(J) of the Act defines a special immigrant juvenile as:

> an immigrant who is present in the United States-
>
> (i)    who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii)   for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii)  in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that-
>
> > (I)    no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the

Secretary of Health and Human Services specifically consents to such jurisdiction; and

(II)    no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter[.]

When examining the documentation that supports a petition for special immigrant juvenile, it is incumbent upon USCIS to determine that several conditions exist before the petition may be approved. Section 204.11(c) of Title 8, Code of Federal Regulations (CFR), relevantly states an alien is eligible for classification as a special immigrant under Section 101(a)(27)(J) of the INA if the alien:

> ➤ Is under twenty-one years of age;
> ➤ Is unmarried;
> ➤ Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court; and
> ➤ Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents, while the alien was in the United States and under the jurisdiction of the court.

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA 2008) effective March 23, 2009, the petitioner must demonstrate that it would not be in the alien's best interest to be returned to the alien's or parent's country of nationality or last habitual residence and a juvenile court must find that reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law.

Section 101(a)(27)(J)(iii) of the Act requires the Secretary of Homeland Security (through the USCIS Director and his delegates) to consent to the grant of special immigrant juvenile ("SIJ") status. 8 C.F.R. §§ 1.1, 204.11(e). This consent determination is an acknowledgement that the request for special immigrant juvenile classification is bona fide, meaning that neither the juvenile court order nor the best interest determination was "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect." H.R. Rep. No. 105-405, at 130 (Nov. 13, 1997).

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) amended the SIJ definition by expanding the group of aliens eligible for special immigrant juvenile classification to include aliens who have been placed under the custody of "an individual or entity appointed by a State or juvenile court." *See* TVPRA section 235(d)(l)(A); *Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions Memo*[1] at 2 (hereinafter "TVPRA - SIJ Provisions Memo"). Second, the TVPRA removed the need for a juvenile court to deem a juvenile eligible for long-

---

[1] *Available online at:*
http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf.

term foster care due to abuse, neglect, or abandonment, and replaced it with a requirement that the juvenile court find that reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law. *See* TVPRA section 235(d)(I)(A); *TVPRA - SIJ Provisions Memo* at 2. Third, the TVPRA provides age-out protection to special immigrant juvenile petitioners so that after December 23, 2008, a petition for special immigrant juvenile status may not be denied based on age "if the alien was a child on the date on which the alien applied for such status." TVPRA section 235(d)(6); *TVPRA – SIJ Provisions Memo* at 2-3. USCIS interprets the use of the term "child" in the TVPRA to refer to "an unmarried person under 21 years of age." *TVPRA - SIJ Provisions Memo* at 3. Fourth, the TVPRA requires USCIS to adjudicate special immigrant juvenile petitions within 180 days of filing. *See* TVPRA section 235(d)(2); *TVPRA - SIJ Provisions Memo* at 4.

Additionally, the TVPRA modified the two forms of consent: express consent and specific consent, required for special immigrant juvenile petitions. First, instead of "expressly consent[ing] to the dependency order serving as a precondition to the grant of special immigrant juvenile status," the new definition requires the Secretary of Homeland Security (through the USCIS Director and his delegates) to "consent[] to the grant of special immigrant juvenile status." TVPRA section 235(d)(I)(B); *TVPRA - SIJ Provisions Memo* at 3. This consent determination "is an acknowledgement that the request for special immigrant juvenile classification is bona fide," meaning "that the special immigrant juvenile benefit was not 'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment.'" *See TVPRA - SIJ Provisions Memo* at 3 (quoting H.R. Rep. No. 105-405 at 130 (1997)); Memorandum from William R. Yates, Assoc. Dir. for Operations, USCIS, to Reg. Dirs. & Dist. Dirs., *Memorandum #3 - Field Guidance on Special Immigrant Juvenile Status Petitions* (May 27, 2004)[2] at 2 (quoting same legislative history). "An approval of an special immigrant juvenile petition itself shall be evidence of the Secretary's consent." *TVPM - SIJ Provisions Memo* at 3. Second, the TVPRA transferred the "specific consent" function, which applies to juveniles in federal custody, from the Secretary of Homeland Security, as previously delegated to U.S. Immigration and Customs Enforcement, to the Secretary of Health and Human Services (HHS), if the juvenile is in HHS custody. *Id.* USCIS requires the factual basis for the court's findings so it may fulfill its required consent function. Juvenile court orders that include or are supplemented by specific findings of fact as to its special immigrant juvenile findings will generally be sufficient to establish eligibility for consent. Although a juvenile court's findings need not be overly detailed, they must reflect that the juvenile court made an informed decision. *Id.*

The petitioner has the burden of establishing that he or she is eligible for the requested benefit at the time of filing the benefit request. "Each benefit request must be properly completed and filed with all initial evidence required by applicable regulations and other USCIS instructions." 8 C.F.R. § 103.2(b)(1). The petitioner bears the burden of proof to establish his or her eligibility by a preponderance of the evidence. Section 291 of the Act; *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

Special Immigrant Juvenile status requires that the alien be under twenty-one (21) years of age at the time of filing. 8 C.F.R. § 204.11(c)(1). The Form I-360 Instructions require the petitioner to submit a "[c]opy of the juvenile's birth certificate or other evidence of his or her age." The petitioner's age is

---

[2] *Available online at:*
http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2004/sij_memo_052704.pdf.

determinative of the state court's jurisdiction and for eligibility to file the Special Immigrant Juvenile petition. Any document in a foreign language must be submitted along with a certified English translation. The translator must certify that he/she is competent to perform the translation and that the translation is accurate. 8 C.F.R. § 103.2(b)(3). The Form I-360 Instructions also require the petitioner to submit "[c]opies of the court or administrative document(s) upon which the claim to eligibility is based."

On October 26, 2016, USCIS issued a Policy Manual section on Special Immigrant Juvenile petitions to supersede the prior memos.[3] The Policy Manual Volume 6, Part J, Chapter 2, Section D provides guidance:

> To be eligible for special immigrant juvenile classification, a juvenile court in the United States must have issued [an] order (or orders) with the following findings:
>
> - Dependency or Custody – Declares the petitioner dependent on the court, or legally commits or places the petitioner under the custody of either a state agency or department, or a person or entity appointed by a state or juvenile court;
> - Parental Reunification – Declares, under the state child welfare law, that the petitioner cannot reunify with one or both of the petitioner's parents prior to aging out of the juvenile court's jurisdiction due to abuse, neglect, abandonment, or a similar basis under state law; and
> - Best Interests – Finds that it would not be in the petitioner's best interest to be returned (to a placement) in the petitioner's, or his or her parent's, country of nationality or last habitual residence.[4]

The Policy Manual Volume 6, Part J, Chapter 3, Section A.2 provides guidance on a court's required findings:

> The juvenile court order (or orders) must provide the required findings regarding dependency or custody, parental reunification, and best interests. These findings may be made in a single juvenile court order or in separate juvenile court orders. The order (or orders) should use language establishing that the specific findings (conclusions of law) were made under state law. The order (or orders) should not just mirror or cite to immigration law and regulations. The juvenile court order may use different legal terms from those found in the INA as long as the findings have the same meaning as the requirements for SIJ classification.
>
> There is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law. Juvenile courts should follow their state laws on issues such as when to exercise their authority, evidentiary standards, and due process.
>
> The language of the order may vary based on individual state child welfare law. If a juvenile court order makes the findings based upon a state law similar to abuse, neglect, or abandonment, the petitioner must establish that the nature and elements of the state law are indeed similar to the nature and elements of laws on abuse, neglect, or abandonment. Petitioners are encouraged to

---

[3] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ.html.

[4] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html#S-D.

submit the juvenile court's findings of how the basis is similar to abuse, neglect, or abandonment and copies of the relevant laws.[5]

**Pertinent Facts**

The record of proceedings before USCIS indicates that you were born on ███████████, in San Francisco de Becerra, Olancho, Honduras, to ████████████████████and ████████████████████. You entered the United States without admission or parole on or about September 5, 2015. During initial processing, you informed the U.S. Customs and Border Protection (CBP) officers that you came to the U.S. to seek education and to live with your aunt, ████████, and that your aunt had made the travel arrangements for you. On September 6, 2015, CBP issued a Notice to Appear (NTA) placing you in removal proceedings. You were released from HHS custody to an unrelated sponsor, a family friend, ████████, on January 29, 2016. The removal proceedings are ongoing.

On September 12, 2016, you, through your counsel, Chloe Louise Walker, filed a Petition for Special Immigrant Juvenile, Form I-360. The documents submitted in support of the petition included:

- A copy of your Honduras birth certificate with certified English translation; and
- A certified copy of a "Declaratory Judgment," issued on September 6, 2016, by the 315th District Court of Harris County, Texas, in Cause No. ████████.

In the September 6, 2016 Declaratory Judgment, the court relevantly ordered and found that:

- "Petitioner is entitled to a finding of her best interests in order to prevent further harm to her."
- "[T]his District Court of the State of Texas has subject matter jurisdiction to enter Declaratory Judgments to declare rights, status, and other legal relations regarding those persons over whom this court has personal jurisdiction pursuant to the Texas Uniform Declaratory Judgements Act, Chapter 37 of the Texas Civil Practice and Remedies Code."
- "[T]his court is a juvenile court, a court located in the United States having jurisdiction under the State law to make judicial determinations about the custody and care of juveniles."
- "████████ is dependent upon this juvenile court in accordance with the laws of the State of Texas while she is residing in the State of Texas."
- "████████ has been abused, abandoned, and neglected. Based on evidence presented at the hearing on this case, the Court specifically finds pursuant to Tex. Fam. Code §§ 151.102(1),[6] 251.001(1), (4)[7]:
  o ████████ was abused and neglected by her mother, ████████, whose boyfriend ████████, sexually abused ████████ and who did not protect ████████ from such abuse after learning about it.

---

[5] Available online at: https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter3.html#S-A.

[6] Texas Family Code § 152.102(1): "Abandoned" means left without provision for reasonable and necessary care or supervision.

[7] § 251.001 does not exist in the Texas Family Code.



- ○   ▓▓▓▓▓▓▓▓▓▓▓▓ was abandoned and neglected by her father, ▓▓▓▓▓▓▓▓▓▓▓, who has not financially or emotionally supported ▓▓▓▓▓▓ since birth."

- "... ▓▓▓▓▓▓▓▓▓▓▓ cannot reunify with her mother, ▓▓▓▓▓▓▓▓▓▓▓, because she abused and neglected ▓▓▓▓▓▓▓▓▓ "

- "... ▓▓▓▓▓▓▓▓▓▓▓ cannot reunify with her father, ▓▓▓▓▓▓▓▓▓▓▓, because he abandoned and neglected ▓▓▓▓▓▓▓▓▓ "

- "[I]t is not in ▓▓▓▓▓▓▓▓▓▓▓'s best interest to be returned to her country of last habitual residence, Honduras, because she was abused, neglected and abandoned by her parents in that country and has no one to protect her and care for her in Honduras."

USCIS notes that your attorney prepared the Declaratory Judgment signed by the court.

On November 9, 2016, you and your counsel Chloe Louise Walker appeared for an interview to determine eligibility for your Special Immigrant Juvenile petition. During the interview with an USCIS Officer, you testified that the information on your Form I-360, along with any amendments made during the interview, and supporting documents were true and correct. At the interview, you submitted:

- A certified copy of a "Petition for Declaratory Judgment," filed with the state court on May 25, 2016; and
- A certified copy of "Affidavit of ▓▓▓▓▓▓▓▓▓▓▓ in Support of Her Petition for Declaratory Judgment," executed on August 11, 2016, filed with the state court on August 30, 2016.

The Petition for Declaratory Judgment seeks a declaratory judgment under Chapter 37 of the Texas Civil Practice and Remedies Code,[8] specifically § 37.004,[9] and requests that the court find that:

- you "dependent upon this juvenile court in accordance with the laws of the State of Texas while [you are] residing in the State of Texas."
- "reunification with one or both parents ... is not viable due to abuse, neglect or abandonment, or a similar basis found under TEX. FAM. CODE § 261.001(1), (4)."[10]

---

[8] Uniform Declaratory Judgments Act.

[9] SUBJECT MATTER OF RELIEF.
(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
(b) A contract may be construed either before or after there has been a breach.
(c) Notwithstanding Section 22.001, Property Code, a person described by Subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties.



- it is not in your "best interest ... to be returned to [your] country of nationality, Honduras, because of abuse, neglect, or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2)[11] and TEX. FAM. CODE § 261.001(1), (4)."

In your August 11, 2016 Affidavit, you state that you do not know where your father currently lives and you lived with your mother and seven siblings in Honduras. Your mother told you that your father left the family when you were an infant. When you were twelve or thirteen, your mother established contact with your father who lived several hours away. He visited you three times and you would talk on the phone once a month. He would promise to send money but he never did. When you were fourteen, your mother met ███████████, who spent several nights per week with your family but did not work because he drank alcohol. In November 2014, ███████ attempted to sexually abuse you. When you told you mother the next morning, she did not believe you, and you believe it was due to her expecting ███████'s baby. Due to ██████████'s behavior, you went to visit your father and his family who were on vacation. One of your father's wife's adult sons sexually assaulted you. Your father and stepmother tried to contact that son the next day, but could not. Your father took you to a doctor who could not confirm the assault, so your father did not take you to the police. You returned to your mother's house but you felt unsafe around ████████ because of the way he looked at you. You told your maternal uncles of your situation and they helped you come to the U.S. You call your mother to talk to your siblings but you do not call your father.

On December 5, 2016, you, through your counsel, Chloe Louise Walker, filed an Application to Register Permanent Residence or Adjust Status, Form I-485. USCIS will be administratively closing the processing of your adjustment application in a separate notice due the immigration court having jurisdiction over your adjustment application.

On May 16, 2017, you, through your counsel Chloe L. Walker, filed an Application for Asylum and for Withholding of Removal, Form I-589, as an unaccompanied child under Section 208(b)(3)(C) of the Act. On July 25, 2017, you and your counsel appeared for an interview to determine your eligibility for asylum. During the interview with an Asylum Officer, you testified that the information on your Form I-589, along with any amendments made during the interview, and supporting documents were true and correct.

During your asylum interview, you testified that your parents separated when you were young. Your father lived with his new wife approximately three to four hours away. You lived with your mother, maternal grandfather, and various siblings in a one-room house. Your mother began dating ████████ ███████ in 2014. After about five months of dating, ███████ began staying overnight at your home

---

[10] Texas Family Code § 261.001(1) defines abuse. Texas Family Code § 261.001(4) defines neglect.

[11] APPOINTMENT OF SOLE OR JOINT MANAGING CONSERVATOR.
(a) In a suit [affecting the parent-child relationship], ... the court:
***

(c) In making an appointment authorized by this section, the court shall consider whether, preceding the filing of the suit or during the pendency of the suit:

(2) a party engaged in a history or pattern of child abuse or child neglect; or
***

7

approximately three nights a week. [redacted] primarily lived with his elderly mother, because he took care of her. You did not experience any problems with [redacted] for approximately six months. However, in November 2014, [redacted] approached your bed and began touching you inappropriately. When you asked him what he was doing, he reacted and went back to his bed. The following day, you asked [redacted] why he touched you. Your mother overheard the conversation and you told her what had happened. [redacted] denied touching you and claimed you were lying. Your mother did not say anything. You remained with your mother for approximately one week and then traveled to your father's home to live with him.

You further testified that your father welcomed you into his home. You were sleeping in the bedroom of your stepmother's daughter right after your arrival. When the daughter left the room, your stepmother's twenty-year old son, entered the room, covered your mouth and raped you. You did not know why he sexually assaulted you. The next day you told your father and stepmother what had happened. Your stepmother tried to look for her son but could not find him. Your father took you to a doctor for treatment. The doctor confirmed that you had been raped but were not injured. That night, you left your father's home and returned to your mother's home and stayed with your sister and her family. You felt that you could not stay with your sister because she was married and pregnant. You told your mother what happened and she told you she would talk to your father. You remained at your mother's home from November 2014 until you left Honduras on August 8, 2015. You do not know if your father ever contacted the police about his stepson's sexual assault of you because you did not want to talk to him when he called. [redacted] did not attempt to sexually abuse you again. [redacted] did not make any comments or threats to you. You did not report [redacted] to the police or authorities because your mother did not believe you and because you were a minor. Your mother did not contact the police. Your father and stepmother did talk about reporting her son to the authorities; however, you do not know if they did so. You do not know if your mother reported the rape to the authorities either.

There are some minor factual discrepancies between your August 11, 2016 Affidavit submitted to the state court and your testimony in support of your asylum application. On February 22, 2018, the Asylum Office found you ineligible for asylum and referred your asylum application to the immigration court.

*Analysis*

*USCIS's Consent is Not Warranted.*

The Policy Manual Volume 6, Part J, Chapter 2, Section D.5 explains USCIS's consent function:

> The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA 2008) simplified but did not remove the Department of Homeland Security (DHS) consent requirement. In order to consent, USCIS must review the juvenile court order to conclude that the request for SIJ classification is bona fide, which means that the juvenile court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit. The court ordered dependency or custodial placement of the child is the relief being sought from the juvenile court, and the factual basis of each of the required findings is evidence that the request for SIJ classification is bona fide.

USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law.  In order to exercise the statutorily mandated DHS consent function, USCIS requires that the juvenile court order or other supporting evidence contain or provide a reasonable factual basis for each of the findings necessary for classification as a SIJ.  The evidence needed does not have to be overly detailed, but must confirm that the juvenile court made an informed decision in order to be considered "reasonable." USCIS generally consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required findings.

USCIS recognizes that there may be some immigration motive for seeking the juvenile court order. For example, the court may make findings in separate hearings and the petitioner may request an order that compiles the findings of several orders into one order to establish eligibility for SIJ classification. A special order issued to help clarify the findings that were made so that USCIS can determine the petitioner's eligibility for SIJ classification does not mean that the order is not bona fide.[12]

*The Finding that You Are "Dependent Upon this Juvenile Court" Does Not Meet the Dependency or Custody Requirement of Section 101(a)(27)(J) of the Act.*

Under Section 101(a)(27)(J)(i) of the Act, the petitioner must have "been declared dependent on a juvenile court" or the court must award custody to an individual or entity as one requirement to qualify for Special Immigrant Juvenile status.

The Policy Manual Volume 6, Part J, Chapter 2, Section D.1 explains dependency or custody:

The petitioner must be the subject of a juvenile court order that declares him or her dependent on a juvenile court, or legally commits to or places the petitioner under the custody of either an agency or department of a state, or a person or entity appointed by a state or juvenile court. Placing the petitioner "under the custody of" a person requires physical custody.  A qualifying court-appointed custodial placement could be with one parent, if reunification with the other parent is found to be not viable due to that parent's abuse, neglect, or abandonment of the petitioner.

Court-ordered dependency or custodial placements that are intended to be temporary generally do not qualify for the purpose of establishing eligibility for SIJ classification.  A court-appointed custodian that is acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent, is not considered a custodian for purposes of establishing SIJ eligibility.[13]

Although 8 C.F.R. §204.11(c) still includes the requirement for long-term foster care eligibility, this section was superseded by the amendment to Section 101(a)(27)(J)(i) of the Act made by the William

---

[12] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html#S-D.

[13] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html#S-D.

Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) that allowed a court to award custody instead of deeming the juvenile eligible for foster care.

An order should use language establishing that the dependency or custody determination was made under state law. 8 C.F.R. § 204.11(c)(3), Policy Manual Volume 6, Part J, Chapter 3, Section A.2. A juvenile court's dependency declaration or child-custody placement must be made in accordance with state law governing such determinations. 8 C.F.R. §204.11(c)(3), Policy Manual Volume 6, Part J, Chapter 2, Section (D)(4).

You sought a declaratory judgment from the state court under Chapter 37 of the Texas Civil Practice and Remedies Code. However, Chapter 37 only provides Texas courts authority to declare a person's rights or status on matters within the state courts' jurisdiction. Texas Civil Practice and Remedies Code § 37.003 reads:

(a) A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for.
(b) The declaration may be either affirmative or negative in form and effect, and the declaration has the force and effect of a final judgment or decree.
(c) The enumerations in Sections 37.004 [Subject Matter of Relief] and 37.005 [Declarations Relating to Trust or Estate] do not limit or restrict the exercise of the general powers conferred in this section in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty.

Texas's Declaratory Judgments Act does not provide any separate basis for standing since it is "merely a procedural device for deciding cases already within a court's jurisdiction[.]" *City of El Paso v. Tom Brown Ministries*, 505 S.W.3d 124, 148-149 (Tex.App. – El Paso 2016) (citations omitted). The Declaratory Judgments Act "does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature." *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *see also Monk v. Pomberg*, 263 S.W.3d 199, 204 (Tex.App.–Houston [1st Dist.] 2007, no pet.) (whether a court has subject matter jurisdiction in a declaratory judgment action depends on whether the underlying controversy is within the jurisdiction of the court).

Within the statutory framework for the special immigrant juvenile classification, a state "juvenile court" rules on matters within its jurisdiction regarding "custody and care" of children, using its own state's laws and precedents involving child welfare. Although the state court found you "dependent upon this juvenile court in accordance with the laws of the State of Texas while … residing in the State of Texas," the September 6, 2016 Declaratory Judgment does not cite to any specific Texas child welfare law or precedents for dependency or custody (conservatorship) that supports this finding. USCIS is not aware of any dependency outside the context of actions under Subtitle E (Chapters 261-266) of the Texas Family Code involving the Department of Family and Protective Services (DFPS). Your situation did not

10

involve the DFPS. Therefore, the district court did not make a <u>qualifying</u> dependency declaration. *See e.g., Matter of C-M-G-V-*, ID# 00789787 (AAO Jan. 30, 2018),[14] 2018 WL 992574.

In support of Special Immigrant Juvenile petition, where the order itself is not sufficient, a petitioner should submit court records that contain the supporting evidence for the court's findings. Policy Manual Volume 6 Part J, Chapter 3, Section A.3 and 4 provide guidance:

3. Factual Basis and USCIS Consent

Template orders that simply recite the immigration statute or regulatory language are generally not sufficient. Orders that have the necessary findings or rulings and include, or are supplemented by, the factual basis for the court's findings (for example, the judicial findings of fact) are usually sufficient to establish eligibility. If a petitioner cannot obtain a court order that includes facts that establish a factual basis for all of the required findings, USCIS may request evidence of the factual basis for the court's findings.

USCIS does not require specific documents to establish the factual basis or the entire record considered by the court. However, the burden is on the petitioner to provide the factual basis for the court's findings. Examples of documents that a petitioner may submit to USCIS that may support the factual basis for the court order include:

- Any supporting documents submitted to the juvenile court, if available;
- The petition for dependency or complaint for custody or other documents which initiated the juvenile court proceedings;
- Affidavits summarizing the evidence presented to the court and records from the judicial proceedings; and
- Affidavits or records that are consistent with the findings made by the court.

4. Supporting Evidence

The order or supporting evidence should specifically indicate:

- With whom the child is placed (for example, the name of the person, or entity, or agency if the child is adjudicated dependent) and the factual basis for this finding;
- Which of the specific grounds (abuse, neglect, abandonment, or similar basis under state law) apply to which of the parent (or parents) and the factual basis for the court's findings on non-viability of parental reunification; and
- The factual basis for the determination that it is not in the petitioner's best interest to return to (a placement in) the petitioner's or his or her parents' country of nationality or last habitual residence (for example, addressing family reunification with family that remains in the child's country of nationality or last habitual residence).[15]

---

[14]*Available online at:* https://www.uscis.gov/sites/default/files/err/C6%20-%20Dependent%20of%20Juvenile%20Court/Decisions_Issued_in_2018/JAN302018_02C6101.pdf.

[15] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter3.html#S-A.

The September 6, 2016 Declaratory Judgment lacks a qualifying dependency finding or custody award. A court order that merely repeats the language of the statute is insufficient to establish a petitioner's eligibility for special immigrant juvenile status under Section 101(a)(27)(J) of the Act. Without such evidence, the present record does not demonstrate that the court order was sought primarily to obtain relief from parental abuse, neglect, abandonment, or a similar basis under state law, and not primarily to obtain lawful permanent residency in the United States.

The present record does not warrant consent to a grant of Special Immigrant Juvenile classification in this case, as required by Section 101(a)(27)(J)(iii) of the Act. Therefore, it is the USCIS's intention to deny the Special Immigrant Juvenile petition.

You may submit documentation showing your eligibility for Special Immigrant Juvenile status, such as:

- any other petition(s) seeking the order, with all supporting documentation;
- any proof of notification to the relevant party/ies of the court case;
- any other affidavits or reports supporting the district court's factual findings;
- any motion(s) filed with the state district court;
- full transcripts of any court hearings;
- any other orders by the state district court;
- a complete docket sheet; and/or
- any other documentation showing eligibility.

Any copies of court documents should be certified by the clerk of court. Any documents not in the English language must be accompanied by a certified English translation. The translator must certify that he/she is competent to perform the translation and that the translation is accurate. 8 C.F.R. § 103.2(b)(3).

Therefore, you are afforded the opportunity within 30 days from receipt of this notice to submit a response. Any documents received will be carefully reviewed. Submit the response to the above address by mail to the attention of: **AI6113**. If no response is received within that period, the petition will be denied as indicated.

PLACE THIS ENTIRE LETTER ON TOP OF YOUR RESPONSE. SUBMISSION OF EVIDENCE WITHOUT THIS LETTER WILL DELAY PROCESSING OF YOUR CASE AND MAY RESULT IN A DENIAL.

Sincerely,

Mark Siegl
Field Office Director

cc:     Javier Arturo Dominguez, Esq.
        Tahirih Justice Center
        1717 Saint James Place, Suite 450
        Houston, TX  77056

13

Redacted
Exhibit 7

1

1    CAUSE NO. ▓▓▓▓▓▓▓▓▓

2

3

4

5

6    IN THE INTEREST OF          IN THE DISTRICT COURT OF

7    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓          HARRIS COUNTY, TEXAS

8    A CHILD                      315TH JUDICIAL DISTRICT

9

10

11   * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

12

13                DECLARATORY JUDGMENT

14   * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

15

16        On the 6th day of September, 2016, the following

17   proceedings came on to be heard in the

18   above-entitled and numbered cause before the

19   Honorable Brian Fischer, Substitute Associate Judge

20   & Juvenile Law Master presiding, held in Houston,

21   Harris County, Texas, and no jury.

22        Proceedings reported by mechanical stenography.

23

24                                    ORIGINAL

25

2

1                          A P P E A R A N C E S

2

3

4        Attorney for Petitioner:

5        Ms. Chloe Louise Walker
         SBN 24084031
6        Tahirih Justice Center
         1717 St. James Place, Ste. 450
7        Houston, TX 77056
         713-496-0100
8

9        Ms. ████████████████████████████████, youth,
              assisted by Spanish language interpreter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                                  INDEX
2
3
4      September 6, 2016
5
                                                      Page
6      Appearances ....................................    2
7      Index ..........................................    3
8
9      PETITIONER'S WITNESS:
10
                                      DIRECT    CROSS
11     ██████████████████████████      4         --
12
13     Court takes judicial notice ...................    6
14     Court's rendition .............................    8
15     Adjournment ...................................    9
16     Reporter certificate ..........................   10
17
18
19
20
21
22
23
24
25

████████████, Witness          9-06-16
Direct Examination by Ms. Chloe Walker          4

1          (All parties sworn with the assistance

2          of a Spanish language interpreter)

3

4          THE COURT:  Okay.  We're on the record

5   in Cause No. ████████.  Counsel, you can make your

6   appearances.

7          MS. CHLOE WALKER:  Your Honor, my name

8   is Chloe Walker and I'm representing the Petitioner,

9   ████████████████████; and we are here today

10  requesting a declaratory judgment from the Court.

11         THE COURT:  All right.  Go ahead.

12         MS. CHLOE WALKER:  Thank you.

13  ████████████████████,

14  having first been duly sworn, testified as follows;

15              **DIRECT EXAMINATION**

16  QUESTIONS BY MS. CHLOE WALKER:

17     Q.   Would you please state your full name.

18     A.   ████████████████████

19     Q.   And how old are you?

20     A.   Seventeen years old.

21     Q.   Are you married?

22     A.   No.

23     Q.   Where were you born?

24     A.   In Honduras.

25     Q.   And where do you live now?

██████████████████, *Witness*          9-06-16          5
*Direct Examination by Ms. Chloe Walker*

1    A.   Here in Houston, Texas.

2    Q.   And who do you live with in Houston?

3    A.   With ████.

4    Q.   And what is ██████'s full name?

5    A.   ████████████████████████████ (phonetic).

6    Q.   And how do you know █████?

7    A.   She's a friend of my family's.

8    Q.   And how long have you lived with █████?

9    A.   One year in December.

10   Q.   How do you know █████?

11   A.   I know her because she's been a friend of my

12   family ever since I was very young.

13   Q.   And how do you feel about living with █████?

14   A.   I -- I like it because she helps me and she

15   supports me and everything.

16   Q.   What are your parents' names?

17   A.   My mom's name in ███████████████████████

18   ██████ and my dad is ███████████████████████.

19   Q.   And where are your parents?

20   A.   In Honduras.

21   Q.   And when was the last time you lived with

22   your father -- in the same house as your father?

23   A.   I've lived with my mom up until I came here in

24   2015; and with my dad, I've only seen him one time in

25   my life.

1      Q.   And so what is your relationship like with
2   your father?
3      A.   Not good because the one -- the time I did go
4   visit him my stepbrother abused me.
5      Q.   And did your father support you financially
6   when you were growing up?
7      A.   No, never.
8      Q.   And when was the last time you lived with
9   your mother?
10      A.   2015 when I came here.
11      Q.   And how long did you live with your mother?
12      A.   Since I was a child.
13      Q.   And why did you stop living with your mother?
14      A.   Because the man she's with, her husband,
15   tried to abuse me as well.
16           MS. CHLOE WALKER:  And, Your Honor, I'd
17   just ask you to take judicial -- judicial notice of
18   her affidavit which is on file with the Court.
19           THE COURT:  Court takes notice.
20           (Court takes judicial notice as
21           requested)
22      Q.   (Ms. Chloe Walker) What is your relationship
23   like with your mother now?
24      A.   Sometimes good, sometimes bad because --
25   because she continues to be with the person that tried

1    to abuse me.

2        Q.   So did you feel safe living in your mother's

3    house?

4        A.   No.

5        Q.   Did you mother do anything to protect you

6    while you were living with her?

7        A.   No, never.

8        Q.   Is there anybody else you can live with in

9    Honduras?

10       A.   No, that's why my uncle supported me and

11   helped me to come and be with ██████.

12       Q.   And are your parents supporting you

13   financially now while you're living with ██████?

14       A.   No, ██████ does everything for me.

15       Q.   And do you think you would be safe living

16   with either of your parents in Honduras?

17       A.   No.

18       Q.   Are you going to school?

19       A.   Yes.

20       Q.   Where are -- where do you go to school?

21       A.   ███████████████████████.

22       Q.   And what grade are you in at ██████████?

23       A.   Ninth.

24       Q.   How do you like school?

25       A.   I like -- I like it a lot.  I have a lot of

1   friends and I have good relationships with my

2   teachers.

3        Q.   Do you plan on finishing high school?

4        A.   Yes.

5        Q.   And are you asking the Court to -- to sign

6   off on the declaratory judgment today?

7        A.   Yes.

8             MS. CHLOE WALKER:  That's all I have,

9   Your Honor.

10            THE COURT:  And does she live in Harris

11   County, Texas?

12            MS. CHLOE WALKER:  Yes.

13

14       Q.   (Ms. Chloe Walker)Do you live in Harris

15   County, Texas?

16       A.   Yes.

17            THE COURT:  All right.  Court finds that

18   the -- the Petitioner is a resident of Harris County,

19   Texas.  Court finds that the child's previous country

20   of residence was Honduras.  Court finds that the child

21   is under the age of 21 and unmarried.  Court finds

22   that the child was the subject of abuse, neglect

23   and/or abandonment as defined by State Law.  Court

24   finds that it is not in the child's best interest to

25   be returned to Honduras.  Court finds that the child

9

1   is entitled to Special Immigrant Status as defined by

2   Section 101(a)(27)(J) of the Immigration and

3   Naturalization Act.

4                    And so therefore the petition is

5   granted.

6                    *(Court grants petition)*

7                    *MS. CHLOE WALKER:*  Thank you.

8                    *THE COURT:*  Sure.

9                    We're off.

10                   *(Proceedings concluded)*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

10

1    STATE OF TEXAS        )

2    COUNTY OF HARRIS      )

3        I, VALERIE S. MURRAY, Deputy Court Reporter in

4    and for the 315th Judicial District Court of Harris

5    County, State of Texas, do hereby certify that the

6    above and foregoing contains a true and correct

7    transcription of all portions of evidence and other

8    proceedings requested in writing by counsel for the

9    parties to be included in this volume of the

10   Reporter's Record in the above-styled and numbered

11   cause, all of which occurred in open court or in

12   chambers and were reported by me.

13       I further certify that this Reporter's Record of

14   the proceedings does not reflect the exhibits, if any,

15   admitted by the respective parties.

16       I further certify that the total cost for the

17   preparation of this Reporter's Record is $ 64.00

18       WITNESS MY OFFICIAL HAND this the 20th day of

19   June, 2018.

20                       /s/ Valerie S. Murray

21                       VALERIE S. MURRAY, CSR#3988
                         Expiration Date:   12-31-2018
22                       Deputy Court Reporter
                         315th District Court
23                       Harris County
                         Houston, TX 77002
24

25

                    *Valerie S. Murray, CSR,RPR*
                         *832-385-6693*

Redacted
Exhibit 8

June 21, 2018

U.S. Department of Homeland Security
Houston Field Office
████████
810 Gears Rd., Suite 100
Houston, TX 77067-4416

RE:     ████████████████████ (A# ████████)
**Notice of Intent to Deny: Application for Special Juvenile Petition, I-360**

Hello:

I represent ████████████████████ (hereinafter "████████") and file on her behalf this
Notice of Intent to Deny ("NOID") response in connection with your letter dated May 23, 2018,
notifying her of U.S. Citizenship and Immigration Services ("USCIS") intent to deny her I-360
Petition. I have a G-28 on file.

The Immigration and Nationality Act of 1990 provides Special Immigrant Juvenile Status
("SIJS") for children who are unable to reunify with one or both parents due to abandonment,
neglect, abuse, or a similar basis found under State law, and who are dependent upon a
juvenile court.

Under the plain language of the federal SIJS statute, 8 U.S.C. § 1101(a)(27)(J), it is clear that
determinations of dependency, legal commitment, custody, and the non-viability of
reunification with one or both parents due to abuse, neglect, abandonment, or a similar basis
found under State law are within the purview of a state juvenile court. Under 8 CFR §
204.11(c), which outlines the eligibility requirements for SIJS, determinations about the child's
dependency, eligibility for long-term foster care, and best interests are to be made by a
juvenile court and in accordance with state law governing such determinations.

████████ satisfies all of the statutory requirements. The juvenile court (315th District Court of
Harris County, Texas) has determined that ████████ is an unmarried juvenile less than 21
years of age; that she is dependent upon the court as this court has jurisdiction over the custody
and care of her; that she is unable to reunify with both of her parents due to her mother's abuse
and neglect, and due to her father's abandonment and neglect; and that it is not in his best
interest to be returned to Honduras, her country of birth and last habitual residence.

The reasons for USCIS' intent to deny ████████'s I-360 petition are set forth on pages 8-12 of
the NOID, where you wrote that the September 06, 2016 Final Order for Declaratory Judgement
(the "Order"), is not bona fide because it lacks a factual basis of each of the required SIJS
findings and therefore, USCIS cannot consent to a grant of SIJS classification. Second, the Order
lacks a qualifying dependency finding or custody award. As a result, "Without such evidence,
the present record does not demonstrate that the [Order] was sought primarily to obtain relief
from parental abuse, neglect, abandonment, or a similar basis under state law, and not primarily
to obtain lawful permanent residency in the United States." NOID at 12.

Under USCIS's own policies governing adjudication of SIJS petitions, "[P]ursuant to statutory
requirements and implementing policy, USCIS will generally defer to State court orders that:
1) Have been properly issued under State law; and 2) Include or are supplemented by a
reasonable factual basis that establishes the court order was sought for relief from abuse,
neglect, abandonment, or a similar basis under State law, and not sought solely or primarily to
obtain an immigration benefit." *See*, USCIS Response to CISOMB SIJ Recommendation,
Leon Rodriguez, "Regarding Response to Recommendations on Special Immigrant Juvenile

*VIA UPS OVERNIGHT MAIL*

Adjudications," (April 19, 2016,) at 2. (hereinafter, "Leon Rodriguez April 2016 USCIS Response.")

All of the supporting documents that were initially filed in ████'s I-360 and I-485 applications establish a clear, viable, and lawful claim to SIJS. ████'s Order was properly issued under the state laws of Texas. The 315th District Court of Texas had personal and subject matter jurisdiction over ████, as she was under eighteen years of age, unmarried, and living within the geographical boundaries of Harris County, Texas. The 315th District Court examined the record, heard the evidence and arguments of counsel, and found that it had personal and subject matter jurisdiction in its September 06, 2016 final order. *See*, pg. 1-2 of "Final Order for Declaratory Judgment" certified copy, originally included as an exhibit in the September 12, 2016, I-360, Petition for Special Immigrant Juvenile.

*USCIS Consent is Warranted because the Request for SIJS Classification is Bona Fide*

USCIS's consent is warranted because there is sufficient factual basis for the special findings that 1) reunification with ████'s mother is not viable due to abuse and neglect, 2) reunification with ████'s father is not viable due to abandonment and neglect, and 2) it is not in ████'s best interest to return to her or her parent's previous country of nationality or country of last habitual residence, of Honduras.

████'s SIJS petition is bonafide. Exhibits 1, 2 and 3 (collectively, the "Supporting Documents") set forth a "[r]easonable factual basis that establishes the court order was sought for relief from abuse, neglect, abandonment, or a similar basis under State law." *See*, Leon Rodriguez April 19, 2016 USCIS Response at 2.

████'s Petition for Declaratory Judgement (*See*, Petition, Exhibit 1) provides direct evidence that the SIJS was bona fide. ████'s petition was sought to obtain relief from abuse and further harm in her home country of Honduras. As her Petition states, "Petitioner is in need of an order from the court to prevent further harm to the child by virtue of the child's circumstance." Petition at 1.

The Petition also establishes both the legal and factual basis supporting the 315th District Court's final order.

"7) That reunification with one or both parents of ████ ████ is not viable due to abuse, neglect or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4).
8) That it is not in the best interest of ████, the subject of this suit, to be returned to her country of nationality, Honduras, because of abuse, neglect, or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4)." *Id.* at 2.

████'s affidavit in support of her Petition (*See*, ████'s Affidavit, Exhibit 2) also sets the bases for non-viability of parental reunification by setting forth specific details regarding her father's neglect and abandonment, and mother's neglect and abuse in Honduras.

"As a child, my siblings and I never knew our father. My mother told me that my father abandoned us when I was an infant. As a young child, my father never visited me, called me, or supported me. I felt resentment that my father was not a part of my life. No one in my family knew anything about where he was or why he left. All we knew is that he lived in another place." *Id.* at ¶8.

"It felt nice finally knowing my father, but he did not feel like my father because we spent so little time together. He did not treat me how a daughter should be treated. He

only came to visit me three times over the years. He never provided me any financial or emotional support." *Id.* at ¶12.

"The next morning [after ███████'s stepfather tried to sexually abuse her], he [███████, ███████'s stepfather] started to stare at me all the time. He looked at me with desire. I called him out, saying "what are you looking at?" and hoping that my mother would overhear. She did. My mom confronted him, but ███████ denied it when my mother confronted him. My mom did not believe me. She believed him." *Id.* at ¶18.

"She did not call the police, or take me to the doctor or sought to protect me in any way. She did not even ask me how I was doing or how I felt. This made me feel like I did not have anyone to protect me from him." *Id.* at ¶19.

"I told my mother that I was leaving since she did not want to separate from ███████, despite what he did to me. My mother's excuse was that she could not leave from ███████ because she was expecting his child. It made me feel really sad that she valued her relationship with ███████ over me because I was her child and he was just the dad of a child she was expecting." *Id.* at ¶22.

"My father took me to the doctor's office that day. After the doctor's assessment, the doctor told me that nothing happened and that there were no visible signs of harm on my body. My father was relieved to hear that which made me feel like he did not believe me. I did not know what to do because I did not feel safe with my mom and now I did not feel safe with my dad..." *Id.* at ¶28.

"When I returned to San Francisco de Becerra, I went to my mom's house but ███████ was there. I told my mom what happened in El Paraiso but she did not do anything in response. She did not confront my father about what happened [in] El Paraiso. My father tried calling me through my mother's phone five times after I had left. My mother did not answer him, because she knew I was upset and did not want to talk to my father. After that, my father stop trying to call me." *Id.* at ¶29.

"My mother still refused to leave ███████ and he continued to harass me. He would make sexually suggestive hand gestures at me but he would be sure not to do it in front of my mom." *Id.* at ¶30.

"I confronted him in front of my mom. ███████ did not deny it [sexual abuse]. He said that he was drunk and sometimes drunk people say things like that. My mother did not respond; she would only tell me to not pay attention to him." *Id.* at ¶31.

"I feel that my mother and father cannot protect me. I was scared to go to the police for what ███████ had done to me. My mother would hate me if I ever reported ███████'s abuse. My mother will always love him no matter what he does. I do not think that the laws in Honduras could protect me, even less so if my mother does not support me." *Id.* at ¶34.

"Since I have been living here in the United States, I still have had any contact with my father. I call my mother every week or two to see how my siblings are doing. My brothers tell me that my mother is still with ███████ and everything remains the same in their relationship. He is still over at my mother's house all the time. When I talk to my mother, I feel that my mother does not emotionally support me. She does not send me any money. ███ is the one who cares and provides for me." *Id.* at ¶36.

Finally, the court transcript in connection with the September 06, 2016 hearing (*See Court Transcript, Exhibit 3*), also provides further evidence of the court's informed decision in its final

<u>*VIA UPS OVERNIGHT MAIL*</u>

order. The 315th District court judge took judicial notice of the presented evidence and found ██████'s testimony credible. *Id.* at p. 6.

> "Q. And so what is your relationship like with your father?
>     A. Not good because the one--- the time I did go visit him my stepbrother abused me.
> Q. And did your father support our financially when you were growing up?
>     A. No, never." *Id.* at p. 6

> "Q. So did you feel safe living in your mother's house?
>     A. No.
> Q. Did your mother do anything to protect you while you were living with her?
>     A. No, never." *Id.* at p. 7

> "Court finds that the child was the subject of abuse, neglect, and/or abandonment as definted by State Law." *Id.* at p. 8

During the September 06, 2016 hearing, ██████ testified about her mother's abuse and neglect. *Id.* p. 6-7. She also testified under oath that there was no one to whom she could safely return to in Honduras. *Id.* at p. 7. She talked about her fear of returning to Honduras because of her abuser, ████████████, and the lack of protection. *Id.* at 6-7 Thus, the SIJS Best Interest eligibility requirement is also clearly satisfied in the supporting documents as well.

Based on ██████'s September 06, 2016 in-court testimony and the prior submitted evidence, the 315th District Court of Harris County made the following special findings needed to qualify for SIJS. *See Final Order for Declaratory Judgment" certified copy, originally included as an exhibit in the September 12, 2016, I-360, Petition for Special Immigrant Juvenile.*

> "6) That ████████████████████████████████ is dependent upon this juvenile court in accordance with the laws of the State of Texas while she is residing in the State of Texas;

> 8) The Court further finds that the ████████████████████████████████ has been abused, abandoned, and neglected. Based on evidence presented at the hearing on this case, the Court specifically finds pursuant to TEX. FAM. CODE §§ 151.102(1), 251.001(1), (4):

> a. ████████████████████████ was abused and neglected by her mother, ████████████████, whose boyfriend ██████ sexually abused ████████████████ and who did not protect ████████████████ from such abuse after learning about it.

> b. ████████████████████████ was abandoned and neglected by her father, ████████████████████████████, who has not financially or emotionally supported ████████████████ since birth.

> 9) Based on the above findings, the Court further that the Petitioner, ████████ ████████████████████████████, cannot reunify with her mother, ████████ ████████████████, because she abused and neglected ████████

*VIA UPS OVERNIGHT MAIL*

> 10) Based on the above findings, the Court further finds that Petitioner, ███████ ██████████████████, cannot reunify with her father, ████ ████████████████, because he abandoned and neglected ████████████████

> 10) Based on the above findings, the Court further finds that it is not in ████████ ██████████████████'s best interest to be returned to her country of last habitual residence, Honduras, because she was abused, neglected and abandoned by her parents in that country and has no one to protect her and care for her in Honduras."

Despite previous counsel's typographical error in citing to TEX. FAM. CODE § 251.001(1) in the Order rather than TEX. FAM. CODE § 261.001(1) to define abuse, the submitted record (and the Supporting Documents therein from the NOID response) strongly reflects that the 315th District Court of Harris County had a factual and legal basis to enter its special findings. The Petition itself asserted that:

> "7) That reunification with one or both parents of ████████████████ ███████████ is not viable due to abuse, neglect or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1) (emphasis added). See Petition at 2.

Based on Tex. R. Civ. P. 299a specifications that "Findings of fact shall not be recited in a judgment," the Order lays out the requirements for SIJS, and looking at the totality of the case filings, the court did in fact make specific findings. ████████ has shown by a preponderance of evidence that her request for Special Immigrant Juvenile classification is bona fide, and therefore, USCIS consent is warranted.

*The September 06, 2016 Final Order for Declaratory Judgement does not lack a Qualifying Dependency Finding*

USCIS contends in their NOID that the September 06, 2016, Final Order for Declaratory Judgment (the Order), lacks a qualifying dependency filing. *See*, NOID at 9-12. Their analysis includes citations to both the October 2016 USCIS Policy Manual and an unpublished, unprecedented decision from the Administrative Appeals Office ("AAO") that occurred after ████████'s I-360 was filed (September 12, 2016), *Matter of C-M-G-V-*, ID#00789787 (AAO January 30, 2018), 2018 WL 992574.

In *Matter of C-M-G-V-*, the AAO upheld USCIS' decision to deny the applicant's SIJS petition because amongst various causes, the state court order did not contain a qualifying declaration of juvenile dependency. *See*, *Matter of C-M-G-V-*, ID#00789787 at 4-5. In its analysis, the AAO referenced the October 2016 USCIS Policy Manual consistently to authorize that the order lacked a qualifying dependency finding. *Id.* at 5. It also addressed the concern that the order did not reference the state law under which the court's authority was based on.

> "However, the orders do not cite to the state statute under which the dependency determination was made. The record also does not contain any other documents underlying the orders that reference the applicable state law. As the record does not contain the state law under which the dependency determination was made, the SIJ orders lack a qualifying dependency declaration..." *Id.*

This is a distinguishable case. Unlike *C-M-G-V-*, ████████, or the Petitioner of her own state court action, included sufficient state authority to administer its determination. *See*, Original Petition for Declaratory Judgment (the "Petition", Exhibit 1) and the Order, signed September 6, 2016. ████████ filed the Petition for Declaratory Judgment in the 315th District Court of

*VIA UPS OVERNIGHT MAIL*

Harris County, a juvenile court that has jurisdiction to determine both the custody and care of the juvenile. █████████'s state court action was "[p]ursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code," whose authority is cited throughout the Petition. *Id.* at 1.

█████████'s Petition specifically cites to the Texas Family Code throughout her petition:

> "6) That ████████████████████████ is dependent upon this juvenile court in accordance with the laws of the State of Texas while she is residing in the State of Texas;
> 7) That reunification with one or both parents of ████████████ ████████████████████ is not viable due to abuse, neglect or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4).
> 8) That it is not in the best interest of ████████████████████████ ████████, the subject of this suit, to be returned to her country of nationality, Honduras, because of abuse, neglect, or abandonment or a similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4)." *Id.* at 2

The Order signed on September 06, 2016 contains specific citations to the Texas Family and the Texas Uniform Declaratory Judgment Act, Chapter 37 as well.

> "IT IS ORDERED as follows:
>
> 2) That this District Court of the State of Texas has subject matter jurisdiction to enter Declaratory Judgments to declare rights, status, and other legal relations regarding those persons over whom this court has personal jurisdiction pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code" *Id.* at 2.
>
> "8) The Court further finds that the ████████████████████████ has been abused, abandoned, and neglected.  Based on evidence presented at the hearing on this case, the Court specifically finds pursuant to TEX. FAM. CODE §§ 151.102(1), 251.001(1), (4):" *Id.*

It is clear that a qualifying juvenile dependency was made as well because the underlying controversy was within the subject matter jurisdiction of the court. In ████████'s case, ████████ brought a declaratory judgment in order to prevent future harm to herself, i.e. her welfare. Her intention is evident in her Petition:

> "4. Petitioner seeks a declaratory judgment pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code which authorizes a person whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise to request determination by the Court any question of construction or validity arising the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations there under. TEX. CIV. PRAC. & REM. CODE § 37.004. Petitioner seeks a declaratory judgment from this District Court in accordance with the laws of the State of Texas. Petitioner requests that the District Court find:

*VIA UPS OVERNIGHT MAIL*

1) Petitioner is in need of an order from the court to prevent further harm to the child by virtue of the child's circumstances;" Petition at 1.

Moreover, the 315th District Court of the State of Texas has subject matter jurisdiction to enter its declaratory judgment to declare a child's rights relating to her care and welfare.

"The 65th Legislature, in 1977, converted all functioning domestic relations and special juvenile courts to district courts of general jurisdiction. However, these courts have primary responsibility for cases involving family law matters, including adoptions, birth records, divorce and marriage annulment, child welfare, custody, support and reciprocal support, dependency, neglect and delinquency, parent and child, and husband and wife. Section 24.601, Tex.Gov't Code." See Texas Judicial Branch, *Texas Judicial System, Subject-Matter Jurisdiction of the Courts*, available at:http://www.txcourts.gov/All_Archived_documents/JudicialInformation/pubs/AR20 07/jud_branch/2a-subject-matter-jurisdiction-of-courts.pdf. at 4.

§ 24.601 of the Texas Government Code bestows jurisdiction to the Texas family courts. It reads,

(a)  A family district court has the jurisdiction and power provided for district courts by the constitution and laws of this state.  Its jurisdiction is concurrent with that of other district courts in the county in which it is located.
(b)  A family district court has primary responsibility for cases involving family law matters.  These matters include:
(1)  adoptions;
(2)  birth records;
(3)  divorce and marriage annulment;
(4)  child welfare, custody, support and reciprocal support, dependency, neglect, and delinquency;
(5)  parent and child; and
(6)  husband and wife.
(c)  This subchapter does not limit the jurisdiction of other district courts nor relieve them of responsibility for handling cases involving family law matters.

Thus, ████'s dependency determination was made in accordance with state authority.

Even if *C-M-G-V-* is not distinguishable, the AAO's decision is not a precedential decision, and does not establish agency policy. As a result, the cited decision has no direct bearing on ████'s case. The AAO website is clear in that respect. Regarding non-precedent decisions,

We [AAO] generally issue non-precedent decisions. These apply existing law and policy to the facts of a given case. A non-precedent decision is binding on the parties involved in the case, but does not create or modify agency guidance or practice. We do not announce new constructions of law nor establish agency policy through non-precedent decisions. As a result, non-precedent decisions do not provide a basis for applying new or alternative interpretations of law or policy. *See*, https://www.uscis.gov/about-us/directorates-and-program-offices/administrative-appeals-office-aao/administrative-appeals-office-aao

USCIS' NOID also relies on its October 2016 Policy Manual as uncontested law, rather than "guidance." As USCIS even acknowledges several times in their NOID, "The Policy Manual Volume 6, Part J, Chapter 2, Section D.5 explains (emphasis added) USCIS's consent function…" and "The Policy Manual Volume 6, Part J, Chapter 2, Section D.1 explains (emphasis added) dependency or custody…" NOID at 8 and 9. "On October 26, 2016, USCIS

_VIA UPS OVERNIGHT MAIL_

issued a Policy Manual section of Special Immigrant Juvenile petitions to <u>supersede</u> (emphasis added) the prior memos." _Id._ at 4.

Its purported reliance to the October 2016 Policy Manual belies the contradiction that USCIS seeks to employ: although USCIS attempts to use the Policy Manual as a primary source to proving its case, the Policy Manual is clear that "nothing in the USCIS guidance should be construed as instructing juvenile courts on how to apply their own state law." _See_, USCIS Policy Manual, Ch. 2, Section D.4. Yet, USCIS deliberately cites to the Policy Manual throughout the NOID. NOID at 4-5; 8-11.

USCIS' October 2016 Policy Manual is also an improper retroactive application of policy. As discussed above, ███████ filed her I-360 application on September 12, 2016. The policy manual was issued _after_ USCIS received ███████ 's I-360. Relying on new internal policy (or guidance), well after the applicant submitted all the documents and evidence in support of her I-360 application amounts to a <u>violation of ███████ 's due process rights and expectation of finality.</u> Because the AAO case and authorities cited by the NOID are neither proper, binding authority nor persuasive authority, USCIS must find that the Order did contain a qualifying dependency finding.

Further, USCIS seeks to invalidate the Order based on its _own_ interpretation of how to apply Texas law. Such a contradictory reading violates the USCIS Ombudsman Recommendations and other policy memoranda which prohibits USCIS from conducting _de novo_ review of the facts presented to the state court, which is deemed to have the expertise to make determinations of child custody and welfare. _See_, USCIS Ombudsman, January Contreras, "Special Immigrant Juvenile Adjudications: An Opportunity for Adoption of Best Practices" (Apr. 15, 2011) (citing 8 U.S.C. §1101(a)(27)(J) (2003); 8 C.F.R. § 204.11(c)(6) and (d)(2)(i); USCIS Interoffice Memorandum, Office of Policy and Strategy and Domestic Operations, Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions, p. 4 (Mar. 24, 2009)). Also, this executive agency overreach attempts to circumvent the scheme created in enacting SIJS legislation, which gives state courts the authority to decide matters of abuse, abandonment and neglect and best interest determinations for children. _See_, § 235 of the William Wilberforce Trafficking Victim Protection Reauthorization Act of 2008 ("2008 TVPRA").

Even if one were to consider USCIS' retroactive arguments that the Order needed to explicitly state both the factual and legal bases of its findings, when read as a whole, ███████ 's September 06, 2016 Order is valid in both Texas and the INA, and it satisfies the October 2016 Policy Manual retroactive requirements. ███████ 's Petition cites to state law under which the court's ultimate determination were rendered in the Order. _See_, Petition at 1-2.

> "4.Petitioner seeks a declaratory judgment pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code which authorizes a person whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise to request determination by the Court any question of construction or validity arising the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations there under. TEX. CIV. PRAC. & REM. CODE § 37.004. Petitioner seeks a declaratory judgment from this District Court in accordance with the laws of the State of Texas. Petitioner requests that the District Court find:" _Id._ at 1.

███████ 's Petition specifically cites to the Texas Family Code in other parts of her petition:

> "6) That ████████████████████████ is dependent upon this juvenile court in accordance with the laws of the State of Texas while she is residing in the State of Texas;

*VIA UPS OVERNIGHT MAIL*

> 7) That reunification with one or both parents of ██████████████
> █████████████ is not viable due to abuse, neglect or abandonment or a
> similar basis found under TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX.
> FAM. CODE § 261.001(1), (4).
> 8) That it is not in the best interest of ███████████████████████
> ███, the subject of this suit, to be returned to her country of nationality,
> Honduras, because of abuse, neglect, or abandonment or a similar basis found under
> TEX. FAM. CODE § 151.102(1), 153.005(c)(2) and TEX. FAM. CODE § 261.001(1), (4)."
> *Id.* at 2

The Order signed on September 06, 2016 contains specific citations to the Texas Family and
the Texas Uniform Declaratory Judgment Act, Chapter 37 as well.

> "IT IS ORDERED as follows:

> 2) That this District Court of the State of Texas has subject matter jurisdiction to enter
> Declaratory Judgments to declare rights, status, and other legal relations regarding
> those persons over whom this court has personal jurisdiction pursuant to the Texas
> Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and
> Remedies Code" *Id.* at 2.

> "8) The Court further finds that the ██████████████████████████████
> has been abused, abandoned, and neglected. Based on evidence presented at the
> hearing on this case, the Court specifically finds pursuant to TEX. FAM. CODE §§
> 151.102(1), 251.001(1), (4):" *Id.*

At the September 06, 2016 prove up hearing, the Honorable Angela Ellis of the 315th Judicial
District of Harris County, Texas accepted jurisdiction over the case, took judicial notice of the
evidence contained in ████████'s file, heard ████████'s personal testimony and found all of it
to be credible in order to make a ruling on the petition. Based on the aforementioned, the Judge
signed the Order.

Judge Ellis found ████████ to be dependent on the court.
> "6) That ██████████████████████████████ is dependent upon this
> juvenile court in accordance with the laws of the State of Texas while she is residing in
> the State of Texas;" Order at 2.

The 315th District Court had both personal and subject matter jurisdiction to declare her rights.
> "2) That this District Court of the State of Texas has subject matter jurisdiction to enter
> Declaratory Judgments to declare rights, status, and other legal relations regarding
> those persons over whom this court has personal jurisdiction pursuant to the Texas
> Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and
> Remedies Code;

> 3) That this court has personal jurisdiction over ████████████████████
> ████████, the subject of this suit, as she resides within the geographical boundaries of
> the State of Texas;

*VIA UPS OVERNIGHT MAIL*

4) That venue in Harris County is proper in this cause as ████████████
████████████, the subject of this suit, resides within the geographical boundaries of Harris County, Texas;

5) That this court is a juvenile court, a court located in the United States having jurisdiction under the State law to make judicial determinations about the custody and care of juveniles;" *Id.*

And finally, as reiterated from above, under Tex. R. Civ. P. 299a, the Order includes the specific requirements needed to apply for SIJS. The specific findings are in fact made throughout the record (and newly submitted record), or totality of the case filings.

████████'s Order identified the parent (both parents) that abused, abandoned, or neglected her: "8) The Court further finds that the ████████████████ has been abused, abandoned, and neglected. Based on evidence presented at the hearing on this case, the Court specifically finds pursuant to TEX. FAM. CODE §§ 151.102(1), 251.001(1), (4):

a. ████████████████████ was abused and neglected by her mother, ████████████████, whose boyfriend ████████ ████████ sexually abused ████████████ and who did not protect ████████████████████ from such abuse after learning about it.

b. ████████████████████ was abandoned and neglected by her father, ████████████████, who has not financially or emotionally supported ████████████████ since birth.

9) Based on the above findings, the Court further that the Petitioner, ████████ ████████████████████, cannot reunify with her mother, ████████, because she abused and neglected ████████████████.

10) Based on the above findings, the Court further finds that Petitioner, ████████ ████████████████████, cannot reunify with her father, ████████████████, because he abandoned and neglected ████████████████.

10) Based on the above findings, the Court further finds that it is not in ████████ ████████████████'s best interest to be returned to her country of last habitual residence, Honduras, because she was abused, neglected and abandoned by her parents in that country and has no one to protect her and care for her in Honduras." *Id.* at 2-3.

USCIS maintains that it "[r]elies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence" yet they question the judicial right of Judge Angela Ellis to preside over a child welfare case. Despite proof in the record stating that the District Court of the State of Texas had accepted both personal and subject matter jurisdiction in entering a declaratory judgment in declaring ████████'s rights to prevent her future harm,

*VIA UPS OVERNIGHT MAIL*

USCIS questions the court's authority to bestow rights in a child's welfare, as guaranteed by the Texas Constitution. *See* § 24.601 of the Texas Government Code. This runs afoul of the Tenth Amendment of the U.S. Constitution. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." *See* U.S. Const. amend. X.

Even the USCIS Ombudsman's office questions USCIS tactics to request additional evidence to support the factual findings of the juvenile court. The USCIS Ombudsman's office has stated that requesting additional documents from state court files have "adverse impacts" on juvenile petitioners and legal service providers. *See*, Citizenship and Immigration Services Ombudsman Recommendation, "Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudication," (December 11, 2015) at 5-6.

> As discussed in the Ombudsman's 2014 and 2015 Annual Reports to Congress, burdensome RFEs in particular reflect "overly expansive search[es] for records supporting the factual findings of State courts, including full court transcripts, and, in some cases, any and all evidence submitted in the underlying proceedings." While these RFEs rarely lead to denials, they do have an adverse impact on juvenile petitioners and their representatives who must obtain and release potentially protected information. They also have an adverse impact on legal service providers who must expend limited resources to respond to such inquiries, which impedes the provision of pro bono legal services to others, especially to children. *Id.*

Moreover, this NOID is inconsistent with the statutory scheme of the law and USCIS' own training manuals. "[T]he adjudicator generally should not second-guess the court rulings or question whether the court's order was properly issued. Orders that include or are supplemented by specific findings of fact as to the above-listed rulings will usually be sufficient to establish eligibility for consent. Such findings need not be overly detailed, but must reflect that the juvenile court made an informed decision. *See*, USCIS Memorandum, William R. Yates, "Regarding Field Guidance on Special Immigrant Juvenile Status Petitions, Memorandum #3," HQADN 70/23 (May 27, 2004), at 4-5.

▮▮▮▮'s September 06, 2016, final order for declaratory judgement unequivocally includes specific details and findings of fact that reflect the 315th District Court of Harris County properly exercised its jurisdiction, and made an informed decision in all of its required findings. *See*, Order at 2-3.

This request is overly burdensome, intrusive, and some of the requested documents are impossible to retrieve, given the protected nature of the Harris County juvenile courts. It also runs afoul on the intent of the law, including USCIS' own policies.

On its face alone, ▮▮▮▮'s I-360 application and the Supporting Documents establish a clear and viable SIJS claim. Without waiving the stated objections from above or any future appeal, I have enclosed additional documents that further substantiate my client's SIJS eligibility:

- Exhibit 1: Certified copy of ▮▮▮▮'s Original Petition for Declaratory Judgment;
- Exhibit 2: Certified copy of ▮▮▮▮'s supporting affidavit; and
- Exhibit 3: Full Court Transcript of the September 06, 2016 Hearing.

_VIA UPS OVERNIGHT MAIL_

I appreciate your timely and urgent assistance in processing and adjudicating this matter expeditiously. Please contact me at 713-496-0100, or JavierD@Tahirih.org if there is any additional information or documentation that you need in order to process this application.

Sincerely,


Javier Arturo Dominguez
Children's Attorney
Tahirih Justice Center

1717 St. James Place, Suite 450 | Houston, TX 77056
P: 713-496-0100 | F: 713-481-1793

Redacted
Exhibit 9



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
810 Gears Road, Suite 100
Houston, TX 77067

U.S. Citizenship
and Immigration
Services

Date:   **JUL 2 7 2018**

████████████████████

Houston, TX 77083



MSC████████

**NOTICE OF DENIAL**
**FORM I-360, SPECIAL IMMIGRANT JUVENILE**

Thank you for submitting Form I-360, Petition for Special Immigrant, to U.S. Citizenship and Immigration Services (USCIS) on September 12, 2016, in accordance with Section 101(a)(27)(J) the Immigration and Nationality Act (INA or Act), as amended.

After a thorough review of your petition and the evidence of record, unfortunately, we must inform you that USCIS is denying your petition for the following reason(s).

*Applicable Law*

Section 203(b)(4) of the Act allocates immigrant visas to qualified special immigrant juveniles as described in Section 101(a)(27)(J) of the Act.  Section 101(a)(27)(J) of the Act defines a special immigrant juvenile as:

an immigrant who is present in the United States-
(i)   who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
(ii)  for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that-
(I)   no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
(II)  no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter[.]

When examining the documentation that supports a petition for special immigrant juvenile, it is incumbent upon USCIS to determine that several conditions exist before the petition may be approved. Section 204.11(c) of Title 8, Code of Federal Regulations (CFR), relevantly states an alien is eligible for classification as a special immigrant under Section 101(a)(27)(J) of the INA if the alien:

1) Is under twenty-one years of age;
2) Is unmarried;
3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court; and
4) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents, while the alien was in the United States and under the jurisdiction of the court.

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA 2008) effective March 23, 2009, the petitioner must demonstrate that it would not be in the alien's best interest to be returned to the alien's or parent's country of nationality or last habitual residence and a juvenile court must find that reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law.

Section 101(a)(27)(J)(iii) of the Act requires the Secretary of Homeland Security, through a U.S. Citizenship and Immigration Services Field Office Director, to consent to the grant of special immigrant juvenile ("SIJ") status. This consent determination is an acknowledgement that the request for SIJ classification is bona fide, meaning that neither the juvenile court order nor the best interest determination was "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect." H.R. Rep. No. 105-405, at 130 (Nov. 13, 1997).

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) amended the special immigrant juvenile (SIJ) definition by expanding the group of aliens eligible for SIJ classification to include aliens who have been placed under the custody of "an individual or entity appointed by a State or juvenile court." See TVPRA section 235(d)(1)(A); *Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions Memo*[1] at 2 (hereinafter "TVPRA - SIJ Provisions Memo"). Second, the TVPRA removed the need for a juvenile court to deem a juvenile eligible for long-term foster care due to abuse, neglect, or abandonment, and replaced it with a requirement that the juvenile court find that reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law. See TVPRA section 235(d)(1)(A); *TVPRA - SIJ Provisions Memo* at 2. Third, the TVPRA provides age-out protection to SIJ petitioners so that after December 23, 2008, a petition for SIJ status may not be denied based on age "if the alien was a child on the date on which the alien applied for such status." TVPRA section 235(d)(6); *TVPRA – SIJ Provisions Memo* at 2-3. USCIS interprets the use of the term "child" in the TVPRA to refer to "an unmarried person under 21 years of age." *TVPRA - SIJ Provisions Memo* at 3. Fourth, the TVPRA requires USCIS to adjudicate SIJ petitions within 180 days of filing. See TVPRA section 235(d)(2); *TVPRA - SIJ Provisions Memo* at 4.

---

[1] http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf.

Additionally, the TVPRA modified the two forms of consent: express consent and specific consent, required for SIJ petitions. First, instead of "expressly consent[ing] to the dependency order serving as a precondition to the grant of special immigrant juvenile status," the new definition requires the Secretary of Homeland Security, through the USCIS District Director, to "consent[] to the grant of special immigrant juvenile status." TVPRA section 235(d)(I)(B); *TVPRA - SIJ Provisions Memo* at 3. This consent determination "is an acknowledgement that the request for SIJ classification is bona fide," meaning "that the SIJ benefit was not 'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment."' See *TVPRA - SIJ Provisions Memo* at 3 (quoting H.R. Rep. No. 105-405 at 130 (1997)); Memorandum from William R. Yates, Assoc. Dir. for Operations, USCIS, to Reg. Dirs. & Dist. Dirs., *Memorandum #3 - Field Guidance on Special Immigrant Juvenile Status Petitions* (May 27, 2004)[2] at 2 (quoting same legislative history). "An approval of an SIJ petition itself shall be evidence of the Secretary's consent." *TVPM - SIJ Provisions Memo* at 3. Second, the TVPRA transferred the "specific consent" function, which applies to juveniles in federal custody, from the Secretary of Homeland Security, as previously delegated to U.S. Immigration and Customs Enforcement, to the Secretary of Health and Human Services (HHS), if the juvenile is in HHS custody. *Id.* USCIS requires the factual basis for the court's findings so it may fulfill its required consent function. Juvenile court orders that include or are supplemented by specific findings of fact as to its SIJ findings will generally be sufficient to establish eligibility for consent. Although a juvenile court's findings need not be overly detailed, they must reflect that the juvenile court made an informed decision. *Id.*

The petitioner has the burden of establishing that he or she is eligible for the requested benefit at the time of filing the benefit request. "Each benefit request must be properly completed and filed with all initial evidence required by applicable regulations and other USCIS instructions." 8 C.F.R. § 103.2(b)(1). The petitioner bears the burden of proof to establish his or her eligibility by a preponderance of the evidence. Section 291 of the Act; *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

Special Immigrant Juvenile status requires that the alien be under twenty-one (21) years of age at the time of filing. 8 C.F.R. § 204.11(c)(1). The Form I-360 Instructions require the petitioner to submit a "[c]opy of the juvenile's birth certificate or other evidence of his or her age." The petitioner's age is determinative of the state court's jurisdiction and for eligibility to file the Special Immigrant Juvenile petition. Any document in a foreign language must be submitted along with a certified English translation. The translator must certify that he/she is competent to perform the translation and that the translation is accurate. 8 C.F.R. § 103.2(b)(3). The Form I-360 Instructions also require the petitioner to submit "[c]opies of the court or administrative document(s) upon which the claim to eligibility is based."

On October 26, 2016, USCIS issued a Policy Manual section on Special Immigrant Juvenile petitions.[3] The Policy Manual Volume 6, Part J, Chapter 2, Section D provides guidance:

> To be eligible for SIJ classification, a juvenile court in the United States must have issued [an] order (or orders) with the following findings:
>
> - Dependency or Custody — Declares the petitioner dependent on the court, or legally commits or places the petitioner under the custody of either a state agency or department, or a person or entity appointed by a state or juvenile court;

---

[2] http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2004/sij_memo_052704.pdf.
[3] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ.html.

- Parental Reunification – Declares, under the state child welfare law, that the petitioner cannot reunify with one or both of the petitioner's parents prior to aging out of the juvenile court's jurisdiction due to abuse, neglect, abandonment, or a similar basis under state law; and
- Best Interests – Finds that it would not be in the petitioner's best interest to be returned (to a placement) in the petitioner's, or his or her parent's, country of nationality or last habitual residence.[4]

The Policy Manual Volume 6, Part J, Chapter 3, Section A.2 provides guidance on a court's required findings:

> The juvenile court order (or orders) must provide the required findings regarding dependency or custody, parental reunification, and best interests. These findings may be made in a single juvenile court order or in separate juvenile court orders. The order (or orders) should use language establishing that the specific findings (conclusions of law) were made under state law. The order (or orders) should not just mirror or cite to immigration law and regulations. The juvenile court order may use different legal terms than those found in the INA as long as the findings have the same meaning as the requirements for SIJ classification.

> There is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law. Juvenile courts should follow their state laws on issues such as when to exercise their authority, evidentiary standards, and due process.

> The language of the order may vary based on individual state child welfare law. If a juvenile court order makes the findings based upon a state law similar to abuse, neglect, or abandonment, the petitioner must establish that the nature and elements of the state law are indeed similar to the nature and elements of laws on abuse, neglect, or abandonment. Petitioners are encouraged to submit the juvenile court's findings of how the basis is similar to abuse, neglect, or abandonment and copies of the relevant laws.[5]

*Pertinent Facts*

The record of proceedings before USCIS indicates that you were born on ▮▮▮▮▮▮▮▮▮▮▮▮, in San Francisco de Becerra, Olancho, Honduras, to ▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮. You entered the United States without admission or parole on or about September 5, 2015. During initial processing, you informed the U.S. Customs and Border Protection (CBP) officers that you came to the U.S. to seek education and to live with your aunt, ▮▮▮▮▮▮▮, and that your aunt had made travel arrangements for you. On September 6, 2015, CBP issued a Notice to Appear (NTA) placing you in removal proceedings. You were released from HHS custody to an unrelated sponsor, a family friend, ▮▮▮▮▮▮▮, on January 29, 2016. The removal proceedings are ongoing.

On September 12, 2016, you, through your counsel Chloe Louise Walker, filed a Petition for Special Immigrant Juvenile, Form I-360. The documents submitted in support of the petition included:

- A copy of your Honduras birth certificate with certified English translation; and

---

[4] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html#S-D.

[5] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter3.html#S-A.

- A certified copy of a "Declaratory Judgment," issued on September 6, 2016, by the 315th District Court of Harris County, Texas, in Cause No. ███████.

In the September 6, 2016, Declaratory Judgment, the court relevantly ordered and found that:

- The petitioner is entitled to a finding of her best interests in order to prevent further harm to her.
- "This District Court of the State of Texas has subject matter jurisdiction to enter Declaratory Judgments to declare rights, status, and other legal relations regarding those persons over whom this court has personal jurisdiction pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code."
- "This court is a juvenile court, a court located in the United States having jurisdiction under the State law to make judicial determinations about the custody and care of juveniles"
- "[T]he child, ███████████████████, is dependent on this juvenile court in accordance with the laws of the State of Texas while she is residing in the State of Texas."
- The child has been abused, abandoned, and neglected.
- "[T]he child's reunification with one or both parents is not viable due to abuse, neglect, or abandonment or a similar basis found under Texas Family Code § 151.102(1), 153.005(c)(2) and Tex. Fam. Code § 261.001(1), (4).
- "[I]t is not in the child's best interest to be returned to her country of last habitual residence, Honduras, because she was abused, neglected and abandoned by her parents in that country and has no one to protect her and care for her in Honduras."

USCIS notes that your attorney prepared the Declaratory Judgment signed by the court.

On November 9, 2016, you appeared with your counsel for an interview to determine eligibility for your Special Immigrant Juvenile petition. You were placed under oath. During the interview with a USCIS Officer, you testified that the information on your Form I-360, along with any amendments made during the interview, and supporting documents were true and correct.

On May 23, 2018, USCIS issued a Notice of Intent to Deny (NOID) identifying that the state court order failed to provide evidence that demonstrates the state court had a reasonable factual basis for its findings.

The NOID requested documentation such as:

- the petition seeking the order, with all supporting documentation;
- any proof of notification to the relevant party/ies of the court case;
- any affidavits or reports supporting the district court's factual findings;
- any motions filed with the state district court;
- full transcripts of any court hearings;
- any other orders by the state district court;
- a complete docket sheet; and/or
- any other documentation showing eligibility.

USCIS allowed 30 days (plus 3 days for mailing) to respond to the NOID. On June 22, 2018, USCIS received a response with the following documents:

- a copy of the NOID;
- a June 21, 2018 cover letter from the petitioner's attorney, Javier Arturo Dominguez;
- a copy of the Petition for Declaratory Judgment filed May 25, 2016;
- a copy of the petitioner's affidavit in support of the petition for declaratory judgment; and
- a copy of court transcripts.

*Analysis*

*A. USCIS's Consent is Not Warranted.*

The Policy Manual Volume 6, Part J, Chapter 2, Section D.5 explains USCIS's consent function:

> The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA 2008) simplified but did not remove the Department of Homeland Security (DHS) consent requirement. In order to consent, USCIS must review the juvenile court order to conclude that the request for SIJ classification is bona fide, which means that the juvenile court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit. The court ordered dependency or custodial placement of the child is the relief being sought from the juvenile court, and the factual basis of each of the required findings is evidence that the request for SIJ classification is bona fide.

> USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law. In order to exercise the statutorily mandated DHS consent function, USCIS requires that the juvenile court order or other supporting evidence contain or provide a reasonable factual basis for each of the findings necessary for classification as a SIJ. The evidence needed does not have to be overly detailed, but must confirm that the juvenile court made an informed decision in order to be considered "reasonable." USCIS generally consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required findings.

> USCIS recognizes that there may be some immigration motive for seeking the juvenile court order. For example, the court may make findings in separate hearings and the petitioner may request an order that compiles the findings of several orders into one order to establish eligibility for SIJ classification. A special order issued to help clarify the findings that were made so that USCIS can determine the petitioner's eligibility for SIJ classification does not mean that the order is not bona fide.[6]

*No Qualifying Dependency Declaration or Placement of Custody in the September 6, 2016 Order.*

The district court's Declaratory Judgment does not contain a qualifying declaration of juvenile dependency or placement of child custody. A Special Immigrant Juvenile (SIJ) must be declared dependent upon a juvenile court, or the juvenile court must have legally committed the SIJ to, or placed the SIJ under the custody of a state agency or department, or of an individual or entity appointed by a state or juvenile court. Section 101(a)(27)(J)(i) of the INA. *See also* 8 C.F.R. § 204.11(c)(3); 6 USCIS Policy Manual, J.2(D), https://www.uscis.gov/policymanual. A juvenile

---

[6] *Available online at:* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html#S-D.

court's dependency declaration or child-custody placement must be made in accordance with state law governing such determinations. 8 C.F.R. §204.11(c)(3) 6 USCIS Policy Manual, *supra*, at J.2(D)(4). The juvenile court should use language establishing that the determination was made under state law and the order should not simply mirror or cite to immigration law and regulations. *Id.* At J.3(A)(2). Here, the district court's Declaratory Judgment briefly states that the petitioner is dependent on the juvenile court in accordance with the laws of the State of Texas but the order does not specifically reference any state law on juvenile dependency under which the district court's determination was made.

In the NOID response the attorney of record argues the NOID is inconsistent with the statutory scheme of the law and USCIS' own training manuals. The attorney of record further argues the adjudicator generally should not second-guess the court rulings or question whether the court's order was properly issued. The attorney also argues the petition and supporting documents establish a clear and viable SIJS claim.

However, the September 6, 2016 Declaratory Judgment does not contain any custody placement. Consequently, the September 6, 2016 Declaratory Judgment lacks a qualifying juvenile dependency declaration or child custody placement, as section 101(a)(27)(J)(i) of the Act requires. *See Matter of J-J-R-.* ID#28295 (AAO June 12, 2017).

Moreover, although provided with an opportunity to provide evidence of the reasonable factual basis relied upon by the court in making its qualifying declaration of juvenile dependency, the evidence you submitted was insufficient.

While the Declaratory Judgment makes some factual assertions, very little objective evidence was submitted or referenced in the August 10, 2016 Order of Declaratory and Judgment Findings. An attorney's unsworn statements are not evidence. Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995), citing Hidalgo v. Surety Sav. & Loan Ass'n, 462 S.W.2d 540, 545 (Tex. 1971) ("Generally, pleadings are not competent evidence, even if sworn or verified."); Chamberlain v. Cherry, 818 S.W.2d 201, 208 (Tex.App.—Amarillo 1991, orig. proceeding) ("Pleadings, motions and arguments of counsel are not evidence.").

In these proceedings, the petitioner bears the burden of proof to establish his eligibility by a preponderance of the evidence. Section 291 of the Act; *Matter of Otiende*, 26 I&N Dec. 127, 128 (BIA 2013); *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

The present record does not warrant consent to a grant of Special Immigrant Juvenile classification in this case, as required by Section 101(a)(27)(J)(iii) of the Act. Therefore, USCIS denies your Special Immigrant Juvenile petition.

If you disagree with this decision, you may appeal to the Administrative Appeals Office (AAO) by filing a Notice of Appeal or Motion (Form I-290B) within 30 calendar days from the date of this letter, 33 calendar days if this letter is mailed. Alternatively, you may use Form I-290B to submit a motion to reopen or reconsider. For the latest information on filing location, fee, and other requirements, please review the Form I-290B instructions at http://www.uscis.gov/forms, call our National Customer Service Center at 1-800-375-5283, or visit your local USCIS office. If USCIS does not receive a properly filed appeal or motion, this decision will become final.

7

This decision does not prevent you from filing any petition or application in the future.

Sincerely,

Mark Siegl
Field Office Director

cc:     Attorney Javier Arturo Dominguez

Exhibit 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| CHAD F. WOLF, in his official capacity as Acting Secretary, U.S. Department of Homeland Security, | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | ) | |
| | ) | |
| KENNETH T. CUCCINELLI, in his official capacity as Acting Director, U.S. Citizenship & Immigration Services, | ) | |
| | ) | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF RICHARD CALDARONE

I, Richard Caldarone, declare:

1.     I am Litigation Counsel with the Tahirih Justice Center, and co-counsel to Plaintiff.

2.     In my capacity as Litigation Counsel working in the Tahirih Justice Center's national office, I coordinate and manage Tahirih's litigation efforts in federal courts throughout the country.

3.     I am unaware of any case prior to 2016 in which the U.S. Citizenship and Immigration Services ("USCIS") rejected a Petition for Special Immigrant Juvenile ("SIJ")

status on the basis that the predicate state juvenile court dependency declaration did not cite or reference a specific state child welfare statute—that is, on the basis of the purported technical defect that the agency has invoked in Plaintiff's case.

4.     To the contrary, I am aware of several (unpublished) cases—all predating the denial in this case—in which USCIS granted SIJ status where the predicate state order was materially identical to the predicate order in Plaintiff's case. I stand ready to provide redacted copies of such predicate orders, subject to an appropriate protective order.

5.     I am unaware of any case prior to 2016 in which the USCIS rejected a Petition for SIJ status as "not bona fide" on the basis that the state juvenile court referenced SIJ status at the underlying dependency proceedings, or any USCIS policy prior to 2016 that prohibited such references to SIJ status by state juvenile courts in making dependency determinations—that is, on the basis that the agency has invoked in finding Plaintiff's Petition "not bona fide" in this case.

6.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Bethesda, MD on August 19, 2020.

Richard Caldarone